**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____        :
                                                    :
QUINN F. SCOTT, RONALD SOCHACKI,                    :
WILLIAM J. DAVENPORT III,                           :
ROBERT DANDO, SR.,                                  :
KEVIN KAZORNOWICZ,                                  :
*on behalf of themselves*                           :
*and all others similarly situated,*                :
                                                    :
                    Plaintiffs,                     :        Civ. A. No. 10-3154-MSG
                                                    :
                    v.                              :        ORAL ARGUMENT REQUESTED
                                                    :
BIMBO BAKERIES USA, INC. and                        :
BIMBO FOODS BAKERIES, INC.,                         :
                                                    :
                    Defendants.                     :
_____        :


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**


Dated: October 1, 2010            Michael J. Puma, Esquire
                                  Sean W. Sloan, Esquire
                                  MORGAN, LEWIS & BOCKIUS LLP
                                  1701 Market Street
                                  Philadelphia, PA 19103
                                  Tel: (215) 963-5000
                                  Fax: (215) 963-5001

                                  *Counsel for Defendants Bimbo Bakeries USA, Inc.*
                                  *and Bimbo Foods Bakeries, Inc.*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION..................................................................................................1

II.     STATEMENT OF ALLEGED FACTS AND PROCEDURAL HISTORY .........................3

III.    LEGAL ANALYSIS ..............................................................................................4

      A.      Plaintiffs Bear The Burden To Plead "Plausible" Claims To Avoid Dismissal..........4

      B.      Plaintiffs Sued The Incorrect Corporate Entity...........................................5

      C.      Plaintiffs Fail to State a Claim Under the WPCL. ......................................6

      D.      Plaintiffs Fail to State a Claim Under the PMWA. .....................................8

            1.      The Implied Preemption Doctrine Precludes State Law Claims That Interfere With The Method By Which A Federal Statute Was Designed To Reach Its Goal...........................................................9

            2.      The FLSA Impliedly Preempts Plaintiffs' PMWA Class Action Claim.......11

                  a.      Congress deliberately banned representative actions for overtime compensation such as Plaintiffs' proposed PMWA class action ....................................................................11

                  b.      Allowing an opt-out PMWA class action for overtime pay would interfere with Congress' objectives in amending the FLSA ................................................................................12

      E.      Plaintiffs Fail to State a Claim Under the FLSA.......................................15

      F.      Plaintiffs Fail to State a Claim for Negligent Misrepresentation. ...........................18

            1.      Plaintiffs Fail to Plead Sufficient Facts Under Rules 9(b) and 12(b)(6).......18

            2.      Plaintiffs' Claims Are Barred By the Gist of the Action Doctrine ..............20

            3.      Plaintiffs' Claims Are Barred By the Parol Evidence Rule ........................22

            4.      Plaintiffs' Claims Are Preempted By the FLSA ..........................................23

IV.     CONCLUSION .................................................................................................25

## TABLE OF AUTHORITIES

**Page**

### CASES

Alexander v. Vesta Insurance Group, Inc.,
147 F. Supp. 2d 1223 (N.D. Ala. 2001)..........................................................................24

Anderson v. Sara Lee Corp.,
508 F.3d 181 (4th Cir. 2007) ...........................................................................................10

Asbury Auto. Group LLC v. Chrysler Ins. Co.,
Civ. A. No. 01-3319, 2002 WL 15925 (E.D. Pa. Jan. 7, 2002) ......................................21

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009)............................................................................................ passim

Audiotext International, Ltd. v. Spring Commc'ns Co.,
Civ. A. No. 03-2110, 2006 WL 1490129 (E.D. Pa. May 26, 2006) ................................23

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)................................................................................................. passim

Bishop v. GNC Franchising LLC,
248 F. App'x 298, 2007 WL 2390427 (3d Cir. 2007).....................................................21

Breeden v. Richmond Community College,
171 F.R.D. 189 (M.D.N.C. 1997) ...................................................................................19

Brothers v. Portage National Bank,
Civ. A. No. 06-94, 2007 WL 965835 (W.D. Pa. Mar. 29, 2007) ...................................12

In re Burlington Coat Factory Sec. Litigation,
114 F.3d 1410 (3d Cir. 1997)............................................................................................2

C.E.R. 1988, Inc. v. Aetna Casualty & Surety Co.,
386 F.3d 263 (3d Cir. 2004)..............................................................................................9

CRS Automobile Parts, Inc. v. National Grange Mutual Insurance Co.,
645 F. Supp. 2d 354 (E.D. Pa. 2009) ..............................................................................20

Cameron-Grant v. Maxim Healthcare Services, Inc.,
347 F.3d 1240 (11th Cir. 2003) ......................................................................................11

Cellucci v. General Motors Corp.,
706 A.2d 806 (Pa. 1998)..................................................................................................10

## TABLE OF AUTHORITIES
### (continued)

Page

Chao v. A-One Medical Services, Inc.,
346 F.3d 908 (9th Cir. 2003) ............................................................................13

Charlton v. Gallo,
Civ. A. No. 09-2447, 2010 WL 653155 (E.D. Pa. Feb. 19, 2010) ................................23

Choimbol v. Fairfield Resorts, Inc.,
Civ. A. No. 05-463, 2006 WL 2631791 (E.D. Va. Sept. 11, 2006)............................10

Dahlan v. Department of Homeland Sec.,
No. 05-5546, 2007 WL 397417 (3d Cir. Feb. 6, 2007) ...................................6

De Asencio v. Tyson Foods, Inc.,
342 F.3d 301 (3d Cir. 2003).............................................................................15

De Lage Landen Finance Services, Inc. v. Barton Nelson, Inc.,
Civ. A. No. 08-530, 2008 WL 4791891 (E.D. Pa. Nov. 4, 2008)...............................21

Deweese v. National R.R. Passenger Corp. (Amtrak),
590 F.3d 239 (3d Cir. 2009)...............................................................................9

Ellis v. Edward D. Jones & Co., L.P.,
527 F. Supp. 2d 439 (W.D. Pa. 2007)...............................................................23

Evancho v. Sanofi-Aventis U.S. Inc.,
Civ. A. No. 07-2266, 2007 WL 4546100 (D.N.J. Dec. 19, 2007)...............................12

Factory Market, Inc. v. Schuller, Inc.,
987 F. Supp. 387 (E.D. Pa. 1997) ...................................................................21

Floyd v. Brown & Williamson Tobacco Corp.,
159 F. Supp. 2d 823 (E.D. Pa. 2001) ...............................................................19

Fuller v. Golden Age Fisheries,
14 F.3d 1405 (9th Cir. 1994) ...........................................................................10

Gade v. National Solid Wastes Management Association,
505 U.S. 88 (1992)....................................................................................9, 14

Gibbs v. Ernst,
647 A.2d 882 (Pa. 1994) ..................................................................................20

Gifford v. Meda,
No. 09-13486, 2010 WL 1875096 (E.D. Mich. May 10, 2010) ...........................15, 16

# TABLE OF AUTHORITIES
## (continued)

Page

Hanover Insurance Co. v. Ryan,
619 F. Supp. 2d 127 (E.D. Pa. 2007) ..........................................................................19

Harding v. Time Warner, Inc.,
Civ A. No. 09-1212, 2010 WL 457690 (S.D. Cal. Jan. 26, 2010)..................................16

Harris v. Healthcare Services Group, Inc.,
Civ. A. No. 06-2903, 2008 WL 2789534 (E.D. Pa. July 18, 2008)..................................7

Herring v. Hewitt Associates, Inc.,
Civ. A. No. 06-267, 2006 WL 2347875 (D.N.J. Aug. 11, 2006)....................................13

Himmelman v. Cont'l Casualty Co.,
Civ. A. No. 06-166, 2006 WL 2347873 (D.N.J. Aug. 11, 2006)....................................13

Horizon Unlimited, Inc. v. Silva,
Civ. A. No. 97-7430, 1998 WL 88391 (E.D. Pa. Feb. 26, 1998) ......................20, 21, 22

Hough/Loew Associates, Inc. v. CLX Realty Co.,
760 F. Supp. 1141 (E.D. Pa. 1991) .............................................................................19

Hyman v. WM Finance Services, Inc.,
Civ. A. No. 06-4038, 2007 WL 1657392 (D.N.J. June 7, 2007)....................................12

Ibrahim v. Plateau Medical Ctr.,
Civ. A. No. 05-0259, 2006 WL 456086 (S.D. W. Va. Feb. 23, 2006) .............................6

In re Insurance Brokerage Antitrust Litigation,
Nos. 08-1455, 08-1777, 07-4046, 2010 WL 3211147 (3d Cir. Aug. 16, 2010) ............20

International Paper Co. v. Ouellette,
479 U.S. 481 (1987)..........................................................................................8, 9, 14

Johnston v. Davis Sec., Inc.,
217 F. Supp. 2d 1224 (D. Utah 2002) ..........................................................................24

Jones v. Casey's General Stores,
538 F. Supp. 2d 1094 (S.D. Iowa 2008) ..................................................................16, 17

Kendall v. City of Chesapeake,
174 F.3d 437 (4th Cir. 1999) ......................................................................................10

Kester v. Zimmer Holdings, Inc.,
Civ. A. No. 10-523, 2010 WL 2696467 (W.D. Pa. June 16, 2010)................................19

# TABLE OF AUTHORITIES
## (continued)

Page

Killian v. McCulloch,
850 F. Supp. 1239 (E.D. Pa. 1994) .........................................................................15

Krentz v. Consolidated Rail Corp.,
910 A.2d 20 (Pa. 2006) ...........................................................................................9

LaChapelle v. Owens-Illinois, Inc.,
513 F.2d 286 (5th Cir. 1975) ...................................................................................11

LePage v. Blue Cross & Blue Shield of Minn.,
No. 08-584, 2008 WL 2570815 (D. Minn. June 25, 2008)....................................16, 17

Lerwill v. Inflight Motion Pictures, Inc.,
343 F. Supp. 1027 (N.D. Cal. 1972) ...................................................................10, 14

Lum v. Bank of America,
361 F.3d 217 (3d Cir. 2004)....................................................................................20

Madrigal v. Green Giant Co.,
Civ. A. No. 78-157, 1981 WL 2331 (E.D. Wash. Jul. 27, 1981)..................................13

Mastrocola v. SEPTA,
941 A.2d 81 (Pa. Commw. 2008) ..............................................................................9

Miree v. DeKalb County,
433 U.S. 25 (1977).................................................................................................5

Moeck v. Gray Supply Corp.,
Civ. A. No. 03-1950, 2006 WL 42368 (D.N.J. Jan. 6, 2006) ................................13, 23

Neitzke v. Williams,
490 U.S. 319 (1989)................................................................................................4

Office of Disciplinary Counsel v. Marcone,
855 A.2d 654 (Pa. 2004) .........................................................................................9

Orson, Inc. v. Miramax Film Corp.,
189 F.3d 377 (3d Cir. 1999)....................................................................................10

Otto v. Pocono Health System,
457 F. Supp. 2d 522 (M.D. Pa. 2006) .......................................................................12

Penn City Investments, Inc. v. Soltech,
Civ. A. No. 01-5542, 2003 WL 22844210 (E.D. Pa. Nov. 25, 2003)...........................21

## TABLE OF AUTHORITIES
### (continued)

Page

Petras v. Johnson,
Civ. A. No. 92-8298, 1993 WL 228014 (S.D.N.Y. Jun. 22, 1993) ...............................24

Phico Insurance Co. v. Presbyterian Medical Serv. Corp.,
444 Pa. Super. 221 (1995)............................................................................................21

Prickett v. DeKalb County,
349 F.3d 1294 (11th Cir. 2003) ...................................................................................11

Quorum Health Resources, Inc. v. Carbon-Schuylkill Community Hospital, Inc.,
49 F. Supp. 2d 430 (E.D. Pa. 1999) .............................................................................23

Ramsey v. Ryan Beck & Co.,
Civ. A. No. 07-635, 2007 WL 2234567 (E.D. Pa. Aug. 1, 2007).................................12

Rochlin v. Cincinnati Insurance Co.,
Civ. A. No. 00-1898, 2003 WL 21852341 (S.D. Ind. July 8, 2003)..............................14

Rodriguez v. Texan, Inc.,
Civ. A. No. 01-1478, 2001 WL 1829490 (N.D. Ill. Mar. 7, 2001)................................13

Sendi v. NCR Comten, Inc.,
619 F. Supp. 1577 (E.D. Pa. 1985) .................................................................................7

Sheinman Provisions, Inc v. National Deli, LLC,
No. 08-453, 2008 WL 2758029 (E.D. Pa. July 15, 2008) ..............................................23

Sleiman v. DHL Express,
Civ. A. No. 09-0414, 2009 WL 1152187 (E.D. Pa. Apr. 27, 2009) .................................7

Sorensen v. CHT Corp.,
Civ. A. No. 03-1609, 2004 WL 442638 (N.D. Ill. Mar. 10, 2004)................................13

Tier1 Innovation, LLC v. Expert Tech. Group, LP,
Civ. A. No. 06-4622, 2007 WL 1377664 (E.D. Pa. May 8, 2007) ................................21

Toner v. Allstate Insurance Co.,
821 F. Supp. 276 (D. Del. 1993)...................................................................................19

Tran v. Le French Baker, Inc.,
Civ. A. No. 94-0482, 1995 WL 374342 (N.D. Cal. June 14, 1995) ..............................13

Velasquez v. Senko,
643 F. Supp. 1172 (N.D. Cal. 1986) ................................................................................6

## TABLE OF AUTHORITIES
### (continued)

Page

Villegas v. J.P. Morgan Chase & Co.,
Civ A. No. 09-00261, 2009 WL 605833 (N.D. Cal. Mar. 9, 2009)................................................16

Wheeler v. Beard,
Civ. A. No. 03-4826, 2005 WL 1217191 (E.D. Pa. May 19, 2005) ............................................22

Woodard v. Fedex Freight E., Inc.,
250 F.R.D. 178 (M.D. Pa. Feb. 19, 2008)....................................................................................12

Zhong v. Aug. Aug. Corp.,
498 F. Supp. 2d 625 (S.D.N.Y. 2007)....................................................................................16, 18

## STATUTES

29 U.S.C. § 207(a)(1)....................................................................................................................12

29 U.S.C. § 216(b) .......................................................................................................................11

29 U.S.C. § 201 et seq....................................................................................................................1

42 U.S.C. § 1983...........................................................................................................................10

43 Pa. Stat. Ann. § 333.104(c) ....................................................................................................12

## RULES

Federal Rule of Civil Procedure 12(b)(6) ......................................................................................1

Federal Rule of Civil Procedure 9(b)..............................................................................................1

## I.    **INTRODUCTION**

Plaintiffs' Amended Complaint (the "Amended Complaint" or "Am. Compl."), filed in response to Defendant Bimbo Bakeries USA, Inc.'s ("BBUSA") initial Motion to Dismiss, does not cure any of the pleading defects associated with Plaintiffs' remaining claims under the Pennsylvania Wage Payment & Collection Law ("WPCL"), Pennsylvania Minimum Wage Act ("PMWA"), and the Fair Labor Standards Act ("FLSA").[1]   Additionally, Plaintiffs' new claim for "negligent misrepresentation" merely applies a different label to the same fraud claim that Plaintiffs' voluntarily dismissed based on the arguments set forth in Defendants' initial Motion to Dismiss.  This claim still fails because it is precluded by the gist-of-the-action doctrine; parol evidence rule; FLSA preemption, and Plaintiffs' failure to plead the claim with requisite particularity.  Because Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted, it should be dismissed in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiffs are all independent contractor distributors who own and operate distributorships for the purchase and sale of bakery products.  Pursuant to Bills of Sale between the individual Plaintiffs and prior distributorship owners, each Plaintiff voluntarily purchased (for a substantial sum) exclusive distribution rights for certain products and brands produced by a BBUSA affiliate.  Plaintiffs, as independent contractors, also referred to in the industry as "Independent Operators" or "IOs", purchase products from BBUSA affiliate Bimbo Foods Bakeries Distribution, Inc. ("BFBD") and resell those products to their customers in their respective Sales Areas.  Each Plaintiff has entered into a Distribution

---

[1]    Plaintiffs also amended their Complaint to add as a defendant Bimbo Foods Bakeries, Inc. ("BFB").  But this does cure their failure in the initial Complaint to name an appropriate party.  Plaintiffs cannot dispute that neither BBUSA nor BFB is a party to any of the Plaintiffs' distribution agreements that are the basis for their claims in this action.  See Distribution Agreements, attached hereto as Exhibits A-K.  In fact, BFB no longer exists.  Although BBUSA's initial Motion to Dismiss specifically identified the party with which Plaintiffs contracted to provide services (see Docket No. 2 (identifying "Bimbo Foods Bakeries Distribution, Inc.")), Plaintiffs ignored this identification and instead amended to add BFB.  As explained infra at Section III.A, Plaintiffs' Amended Complaint should be dismissed as a result.

Agreement (the "Agreement") with BFBD,[2] which governs, among other things, the purchase and sale

of product from BFBD. Plaintiffs own and operate their business and determine how and when to

service their customers, manage the expenses of their businesses, solicit additional business from

existing customers and solicit new customers, develop and retain new customers, determine the products

they sell to each customer and the amount of those products to order, and manage merchandising of the

products. Indeed, Plaintiffs have each confirmed in the Agreement signed with BFBD that they are

independent contractors, not employees. Each Agreement expressly provides:

> The parties intend to create an independent contractor relationship and it
> is of the essence of this Agreement that DISTRIBUTOR be an
> independent contractor for all purposes and DISTRIBUTOR shall only
> identify himself as such in all third party dealings. Any contrary final
> determination by any board, tribunal or court of competent jurisdiction
> shall require the amendment of this Agreement in any way necessary to
> establish an independent contractor relationship. As an independent
> contractor, DISTRIBUTOR has the right to operate the business as
> DISTRIBUTOR chooses, and shall bear all risks and costs of operating
> such business. DISTRIBUTOR has no authority to retain any person on
> behalf of GWBD. It is expressly understood that DISTRIBUTOR has
> no claim, or right under any circumstances, to any benefits or other
> compensation currently paid by GWBD to employees, or hereafter
> declared by GWBD for the benefit of employees.

See Plaintiffs' Agreements attached as Exhibits A-G, K; see also Exhibits H-J.[3]  Nevertheless, despite

this acknowledgement and having held themselves out for years as independent contractors to the public

---

[2]      BFBD was previously named George Weston Bakeries Distribution, Inc. and CPC Baking
Distribution Co., Inc. BFBD is also the successor in interest to the former Best Foods Baking Group. See
Distribution Agreements, attached as Exhibits A-K.

[3]      Although the Amended Complaint fails to attach the Agreements, perhaps because they make
perfectly clear that Plaintiffs understand themselves to be independent contractors, this Court may consider
them as part of this Motion. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.
1997) (holding that a "document integral to or explicitly relied upon in the complaint may be considered" on
a motion to dismiss and a court may also "consider an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"). Here,
Plaintiffs cannot deny that their Agreements are authentic and both integral to, and explicitly relied upon in,
their Amended Complaint. See Am. Compl. ¶¶ 20(l), 21, 28-31, 33-34, 36-38, 48-49, 69, 76, 78, 105-106,
110, and 113-116.

and taxing authorities to enjoy the tax benefits associated with that status, Plaintiffs now claim that they are "controlled" by Defendants and they should be considered employees.

This Court need not reach that ultimate question of contractor or employee status in this action,[4] however, because all of Plaintiffs' claims are facially defective for several reasons:

- ➢ None of the Plaintiffs allege that the Agreements upon which they base their claims are with BBUSA or BFB; therefore, they have sued the incorrect corporate entity;

- ➢ Plaintiffs' individual and class action claims under the WPCL are barred because that statute does not create an independent right to recovery of wages but rather is a mechanism to recover wages allegedly due under a contract, and Section 6.3 of the Agreements does not relate to payment of wages as Plaintiffs allege;

- ➢ Plaintiffs' state law opt-<u>out</u> class action claims for overtime under the WPCL and PMWA are impliedly preempted by the FLSA, which mandates an opt-<u>in</u> joinder mechanism;

- ➢ Plaintiffs' FLSA, PMWA, and WPCL claims for overtime and minimum wage contain only sparse allegations and fail to plead a plausible basis for relief based on the pleading standards articulated by the Supreme Court; and

- ➢ Similarly, Plaintiffs fail to plead facts sufficient to support a negligent misrepresentation claim against Defendants or overcome the gist of the action doctrine, parol evidence rule, and/or FLSA preemption.

Consequently, and as discussed in more detail below, Plaintiffs' Amended Complaint should be dismissed, with prejudice, in its entirety.

## II.    STATEMENT OF ALLEGED FACTS AND PROCEDURAL HISTORY

Plaintiffs are all IOs who purchase baked goods from BFBD at its depot located in Mt. Laurel, New Jersey, and resell and distribute these products to customers within their respective Sales Areas located in New Jersey and Pennsylvania.  Am. Compl. ¶ 2.  The IOs purchased the rights to sell and distribute certain products in a geographically defined Sales Area from, most often, other IOs, not BFBD.  Am. Compl. ¶¶ 30, 32.  Plaintiffs each paid cash down payments to pay for a portion of their distribution business and took out significant loans (not from BFBD) to finance the remaining portion of the purchase price.  Plaintiffs also provide their own delivery vehicle and pay all related expenses (i.e.

gas, insurance, maintenance) and are free to hire their own employees or independent contractors (without notice to, or the consent of, BFBD) to assist in the operation of their respective businesses.

At or about the time of purchase, each IO entered into an Agreement with BFBD.  Am. Compl. ¶¶ 30, 32-33.  Plaintiffs contend that the terms of the Agreement, and the manner in which it is enforced, constitute "direction and control" such that they are employees and not independent contractors.  Am. Compl. ¶ 41.

On June 29, 2010, Plaintiffs commenced this putative class and collective action against BBUSA on behalf of themselves and other IOs who have purchased their baked goods at BFBD's Mt. Laurel depot.  Am. Compl. ¶ 14.  In response to BBUSA's Motion to Dismiss (Docket No. 2), Plaintiffs filed an Amended Complaint on September 20, 2010, voluntarily dismissing their claims for/under: (1) injunctive and declaratory relief; (2) ERISA; (3) common law fraud; (4) the Pennsylvania Workers' Compensation Act; and (5) rescission of the distribution agreements.  See generally Amended Complaint.  Nevertheless, Plaintiffs' Amended Complaint preserves as the basis for their claims the allegation that they have been "misclassified as 'independent contractors' and/or 'independent operators' because in actuality they are 'employees' of Defendants."  Am. Compl. ¶ 2.  Based on that theory, Plaintiffs continue to assert claims under the WPCL, PMWA and FLSA, and now replace their fraud claim with a new claim for common law negligent misrepresentation.  See generally Amended Complaint.  As set forth below, all of these claims fail as a matter of law even without any consideration of Plaintiffs' claimed status as employees.

## III.   LEGAL ANALYSIS

### A.   Plaintiffs Bear The Burden To Plead "Plausible" Claims To Avoid Dismissal.

The purpose of Federal Rule of Civil Procedure 12(b)(6) is to eliminate baseless claims and to streamline litigation by dispensing with allegations that will result in needless discovery.  Neitzke v.

---

[4]   Defendants expressly reserve the right to contest this issue at a later date.

<u>Williams</u>, 490 U.S. 319, 326-27 (1989).  When, as here, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 558 (2007) (internal citations omitted).  Dismissal of claims failing to meet this standard is especially vital for cases (such as this putative action) that present the threat of "sprawling, costly, and hugely time-consuming" discovery.  <u>Id.</u> at 560 n.6.

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept only *well-pled* factual allegations as true and view them in the light most favorable to the nonmoving party.  <u>Miree v. DeKalb County</u>, 433 U.S. 25, 27 n.2 (1977).  Thus, a plaintiff's obligation to provide the grounds for his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 545.  Indeed, "naked assertions devoid of further factual enhancement" are similarly inadequate.  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Rather, to survive a motion to dismiss under Rule 12, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 550.  A claim has "facial plausibility" *only* when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 129 S. Ct. at 1949.  As explained below, Plaintiffs' Complaint should be dismissed for failure to state any claim upon which relief can be granted.

### B.     <u>Plaintiffs Sued The Incorrect Corporate Entity.</u>

In addition to the reasons set forth below for the dismissal of each of Plaintiffs' claims, all of Plaintiffs' causes of action should be dismissed because they are directed at the wrong party.  Plaintiffs' claims directly relate to and rely upon the Agreements, but their Amended Complaint does not allege that any of the Agreements underlying their claims are with BBUSA or BFB.  The simple fact is that they are not.  Rather, their Agreements are between Plaintiffs and either George

Weston Bakeries Distribution Inc., CPC Baking Distribution Co., Inc., or Best Foods Baking

Group.  See Exhibits A-K.

BBUSA's initial Motion to Dismiss noted this same exact problem in Plaintiff's initial

Complaint, and also identified the party with which Plaintiffs did contract to provide services.  See

Docket No. 2 (identifying "Bimbo Foods Bakeries Distribution, Inc.").  For some reason, however,

Plaintiffs ignored this identification and instead amended to add BFB.  Because BBUSA and BFB are

not parties to any of Plaintiffs' Agreements (and in fact BFB not longer exists), Plaintiffs fail to

state a claim against Defendants, and the Complaint should be dismissed.  See Dahlan v. Dep't of

Homeland Sec., No. 05-5546, 2007 WL 397417, at *2 (3d Cir. Feb. 6, 2007) (affirming dismissal of

DHL where plaintiff alleged no legal basis for claims against the defendant); see also Ibrahim v.

Plateau Med. Ctr., Civ. A. No. 05-0259, 2006 WL 456086, at *1 (S.D. W. Va. Feb. 23, 2006)

(dismissing plaintiff's claims where plaintiff failed to sufficiently allege connection between his

employer and the named defendants and agreements filed with motion showed the absence of such a

connection); Velasquez v. Senko, 643 F. Supp. 1172, 1177-78 (N.D. Cal. 1986) (explaining that if

incorrect defendants have been named "then the appropriate remedy is . . . to first move to dismiss

for failure to state a claim").  As Defendants have now been forced twice to incur considerable fees

and costs in briefing this issue when Plaintiffs could easily have identified the proper corporate

defendants from their own Agreements – particularly after BBUSA identified this issue in its initial

filing – Plaintiffs should not have the opportunity to re-plead their claims for a third time.

    **C.**    **Plaintiffs Fail to State a Claim Under the WPCL.**

The Court should dismiss Plaintiffs' WPCL claims in Count I because the WPCL is only

mechanism to enforce contractual obligations, and Plaintiffs have not alleged that BBUSA or BFB both

owed them, and breached any contractual obligation to pay, wages.  Specifically, the WPCL requires an

employer to pay all wages earned during a pay period within fifteen days of the end of such pay period.

43 P.S. § 260.3.  However, the WPCL "does not create a right to compensation."  <u>Harris v. Healthcare</u>

<u>Servs. Group, Inc.</u>, Civ. A. No. 06-2903, 2008 WL 2789534, at *5 (E.D. Pa. July 18, 2008) (granting

employer's motion for summary judgment on plaintiff's WPCL claim) (quoting <u>Weldon v. Kraft, Inc.</u>,

896 F.2d 793, 801 (3d Cir. 1990)).  Rather, it merely provides a statutory remedy where an employer

breaches an *independent contractual obligation* to pay earned wages.  <u>See</u> <u>Sleiman v. DHL Express</u>,

Civ. A. No. 09-0414, 2009 WL 1152187, at *6 (E.D. Pa. Apr. 27, 2009) (granting defendant's Rule

12(b)(6) motion to dismiss plaintiff's WPCL claim and observing that the "WPCL does not create a

substantive right of compensation, but only provides a remedy where an employee [sic] violated an

independent contractual obligation to pay wages"); <u>Harris</u>, 2008 WL 2789534, at *5 (discussed above);

<u>Sendi v. NCR Comten, Inc.</u>, 619 F. Supp. 1577, 1579 (E.D. Pa. 1985) ("The [WPCL] itself does not

create a right to compensation.  Rather, it gives 'additional protections to employees by providing

statutory remedies for the employer's breach of its contractual obligation to pay wages.'").  Therefore,

the WPCL is only a means to enforce contractual rights, not statutory rights such as those set forth in the

PMWA or FLSA.

Here, implicitly conceding that they cannot recover relief under the WPCL for alleged statutory

violations, Plaintiffs attempt for the first time in the Amended Complaint to identify a contractual basis

for their WPCL claims.  Specifically, Plaintiffs allege that § 6.3 of their Agreements provides the

contractual basis upon which Defendants are required to pay wages "for the number of baked goods

sold."  Am. Compl. ¶¶ 76, 78.  This allegation is an obvious misrepresentation of the Agreements.

Instead, Section 6.3 states:

> **PROCEEDS**:  Any sale shall be for the account of DISTRIBUTOR or
> DISTRIBUTOR'S estate, and the proceeds of the sale, after deducting
> there from any monies owed by DISTRIBUTOR to [BFBD], all
> reasonable costs and expenses in connection with the sale (including
> without limitation the cost of removing any off code or damages
> Products in DISTRIBUTOR'S Sales Area) and the satisfaction or any
> outstanding debts, liens, security interests, legal fees and similar
> expenses, shall be turned over to DISTRIBUTOR or DISTRIBUTOR'S

estate.

See Exhibits A-K.  This provision, which is part of the section of the Agreements addressing only the

sale of distribution rights by an IO (for his own profit), has no relation whatsoever to Plaintiffs' claimed

compensation.  Because this provision does not state any obligation to pay compensation or wages for

services as IOs, Plaintiffs have not plead a "plausible" basis for recovery under the WPCL and § 6.3 of

the Agreement, as required by Twombly and Iqbal.  Moreover, Plaintiffs' Amended Complaint does not

allege that they ever sold their distribution rights, so they certainly cannot plead (and thus have not pled)

any violation of the obligations set forth in § 6.3.  For these reasons, Plaintiffs' WPCL claim should be

dismissed pursuant to Rule 12(b)(6).

Finally, for the same reasons as explained below with respect to the PMWA, Plaintiffs' class

action claim for overtime under the WPCL should also be dismissed because such a claim is impliedly

preempted by the FLSA.  See infra Section III.E.

**D.      Plaintiffs Fail to State a Claim Under the PMWA.**

The Court should dismiss Plaintiff's PMWA "opt-out class action claims" in Count II because

they are preempted by the FLSA.  It is important to note that dismissal would not prejudice Plaintiffs or

the individuals they seek to represent because dismissal would not preclude (1) Plaintiffs' individual

claims under the PMWA, or (2) the right of any individual who opts into the putative FLSA collective

action, if and when it is properly pled, to assert his or her individual PMWA claim.  A state law is

impliedly preempted by federal law "if it interferes with the *methods* by which the federal statute was

designed to reach [its] goal."  Int'l Paper Co. v. Ouellette, 479 U.S. 481, 494 (1987) (emphasis added)

(citing Mich. Canners & Freezers Ass'n, Inc. v. Agric. Mktg. & Bargaining Bd., 467 U.S. 461, 477

(1984)).  Plaintiffs' putative PMWA class action relies on Rule 23's opt-out class action joinder method,

which directly interferes with the opt-in collective action joinder method selected by Congress in the

FLSA.  Therefore, the PMWA is impliedly preempted by the FLSA to the extent that Plaintiffs seek to

enforce it through a class action.

      **1.**     **The Implied Preemption Doctrine Precludes State Law Claims That Interfere With The Method By Which A Federal Statute Was Designed To Reach Its Goal.**

In considering whether federal law preempts state law, "it is not necessary for [the] federal statute to provide explicitly that particular state laws are pre-empted."  Int'l Paper, 479 U.S. at 491. Implied preemption exists where compliance with both federal and state law is "a physical impossibility" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992) (citations omitted); Office of Disciplinary Counsel v. Marcone, 855 A.2d 654, 664 (Pa. 2004) (same).  State law is an obstacle "if it interferes with the *methods* by which the federal statute was designed to reach [its] goal," even where the state law shares the same goal.  Int'l Paper, 479 U.S. at 494 (emphasis added).  Indeed, "[t]he focus of preemption analysis is not upon a state law's intent or purpose but, rather, upon the state law's operation, *i.e.*, whether it operates upon the same object as the federal [law].  Otherwise, state law could frustrate the operation of federal law simply by stating that its purpose is something other than the federal objective."  Mastrocola v. SEPTA, 941 A.2d 81, 90-91 (Pa. Commw. 2008) (citing Krentz v. Consol. Rail Corp., 910 A.2d 20, 34 (Pa. 2006)); see also Deweese v. Nat'l R.R. Passenger Corp. (Amtrak), 590 F.3d 239, 246 (3d Cir. 2009) ("[I]mplied conflict preemption exists when, 'under the circumstances of [a] particular case, [the state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'") (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).

The Third Circuit has not hesitated to apply the doctrine of implied preemption to Pennsylvania state law.  See, e.g., C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 270 (3d Cir. 2004) (holding that state tort law was impliedly preempted by the National Flood Insurance Act because its application would impede Congress' objective to reduce fiscal pressure on federal flood relief efforts);

Orson, Inc. v. Miramax Film Corp., 189 F.3d 377, 386 (3d Cir. 1999) (concluding that where federal copyright law granted rights to copyright holder, state law imposing obligation to distribute copies to others was impliedly preempted); see also Cellucci v. Gen. Motors Corp., 706 A.2d 806, 811-12 (Pa. 1998) (concluding that a common law products liability suit was impliedly preempted by the National Traffic and Motor Vehicle Safety Act because it conflicted with federal regulations permitting the allegedly defective design and thus frustrated the goals of the federal regulatory framework).

And the courts have specifically held that the FLSA impliedly preempts or precludes state law claims not authorized by the FLSA itself.  In Kendall v. City of Chesapeake, 174 F.3d 437 (4th Cir. 1999), for example, the Fourth Circuit held that the FLSA's "unusually elaborate enforcement scheme" precluded a claim for fraudulent inducement under 42 U.S.C. § 1983.  Id. at 443.  Similarly, in Anderson v. Sara Lee Corp., 508 F.3d 181 (4th Cir. 2007), the Fourth Circuit held that state law class action claims for wages were impliedly preempted by the FLSA.  Id. at 183, 187, 194; see also Fuller v. Golden Age Fisheries, 14 F.3d 1405, 1409 (9th Cir. 1994) (affirming district court holding that FLSA preempts Alaska state wage and overtime claims).  Since Congress intended the FLSA's "unusually elaborate enforcement scheme" to be the exclusive remedy for a violation of its requirements, the state law claims would stand as an obstacle to the accomplishment of the full purposes and objectives of the FLSA.  Anderson, 508 F.3d at 192, 194 (citing Kendall, 174 F.3d at 443).  The court found this conclusion to be "consistent with the rulings of several district courts deeming state claims to be preempted by the FLSA where those claims have merely duplicated FLSA claims."  Id. at 194 (citations omitted); see also Choimbol v. Fairfield Resorts, Inc., Civ. A. No. 05-463, 2006 WL 2631791, at *5 (E.D. Va. Sept. 11, 2006) (finding common law and statutory claims to be preempted by the FLSA based on "Congress' clear intent that the FLSA be the sole remedy available to employees for enforcement of whatever rights he may have under the FLSA"); Lerwill v. Inflight Motion Pictures, Inc., 343 F. Supp. 1027, 1029 (N.D. Cal. 1972) (concluding that the FLSA discloses "a Congressional

intent that the right of action so provided was to be the *sole* means by which employees could enforce"
their federal overtime rights, noting that "a clearer case of implied intent to exclude other alternative
remedies by the provision of one would be difficult to conceive") (emphasis in original).

In this case, Plaintiffs seek to bring a state law claim under the PMWA as an opt-out class action
(Am. Compl., Count II), but, as discussed in detail below, allowing the PMWA to be enforced in this
manner would interfere with Congress' intent to prohibit opt-out representative actions, as evidenced by
the alternative procedure it adopted to achieve those objectives.  See infra at Section III.D.2.

## 2. The FLSA Impliedly Preempts Plaintiffs' PMWA Class Action Claim.

### a. *Congress deliberately banned representative actions for overtime compensation such as Plaintiffs' proposed PMWA class action.*

In 1947, Congress amended the FLSA to, *inter alia*, expressly prohibit broad representative
actions for unpaid wages and overtime compensation.  Id. § 5(a), 61 Stat. at 87 (entitled "Representative
Actions Banned") (codified as amended at 29 U.S.C. § 216(b)); see also Cameron-Grant v. Maxim
Healthcare Servs., Inc., 347 F.3d 1240, 1248 (11th Cir. 2003) (observing that Congress created the "opt-
in" mechanism to "prevent large group actions, with their vast allegations of liability, from being
brought on behalf of employees who had no real involvement in, or knowledge of the lawsuit") (internal
quotations omitted).  As an alternative, Congress adopted the *collective* or "opt-in" action procedure by
which prospective plaintiffs must affirmatively give their advance consent to any adjudication of their
FLSA rights.  29 U.S.C. § 216(b); see also Prickett v. DeKalb County, 349 F.3d 1294, 1297 (11th Cir.
2003) ("The statute says, [n]o employee shall be a party plaintiff to any such action unless he gives his
consent in writing to become such a party") (internal citation omitted); LaChapelle v. Owens-Illinois,
Inc., 513 F.2d 286, 288 (5th Cir. 1975) (recognizing that under the FLSA, "no person can become a
party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively
'opted into' the class").  In sum, Congress deliberately acted to ensure that employees' rights under the
FLSA (and employers' corresponding liabilities) cannot be adjudicated without each employee's

consent.

    b.  *Allowing an opt-out PMWA class action for overtime pay would*
       *interfere with Congress' objectives in amending the FLSA.*

  The general overtime pay requirement of the PMWA is substantively indistinguishable from that

of the FLSA.  <u>Compare</u> 43 Pa. Stat. Ann. § 333.104(c) <u>with</u> 29 U.S.C. § 207(a)(1).  Additionally,

Pennsylvania law substantially incorporates the standards and definitions of the FLSA.  <u>See</u> <u>Woodard v.</u>

<u>Fedex Freight E., Inc.</u>, 250 F.R.D. 178, 190 (M.D. Pa. Feb. 19, 2008) (noting that the FLSA and PMWA

"parallel each other" and that "the exemptions under those acts are virtually identical").

  In substance, therefore, recovery under the PMWA requires proof that would be sufficient to

establish a violation of the FLSA but that is not subject to that FLSA's comprehensive enforcement

scheme and opt-<u>in</u> joinder mechanism.  As a result, absent preemption, Pennsylvania employees could

circumvent Congress' deliberate restrictions on representative claims for unpaid wages and overtime

compensation merely by bringing their claim as a class action under the PMWA.  Courts in the Third

Circuit have repeatedly concluded that such an effort is impermissible.  <u>See, e.g.</u>, <u>Otto v. Pocono Health</u>

<u>Sys.</u>, 457 F. Supp. 2d 522, 523-24 (M.D. Pa. 2006) (refusing to allow PMWA class action claim to

proceed in FLSA collective action, as it "would essentially nullify Congress's intent in crafting Section

216(b) and eviscerate the purpose of Section 216(b)'s opt-in requirement"); <u>Ramsey v. Ryan Beck &</u>

<u>Co.</u>, Civ. A. No. 07-635, 2007 WL 2234567, at **2, 4 (E.D. Pa. Aug. 1, 2007) (dismissing PMWA and

WPCL class action claims seeking overtime pay and other wages because of the incompatibility

between the FLSA's mandatory opt-in joinder mechanism and Rule 23's opt-out procedure); <u>Evancho v.</u>

<u>Sanofi-Aventis U.S. Inc.</u>, Civ. A. No. 07-2266, 2007 WL 4546100, at *5 (D.N.J. Dec. 19, 2007) (same);

<u>Hyman v. WM Fin. Servs., Inc.</u>, Civ. A. No. 06-4038, 2007 WL 1657392 (D.N.J. June 7, 2007)

(dismissing New Jersey state law overtime pay claims because "[b]y advancing [those claims], Plaintiffs

are essentially circumventing the FLSA's opt-in requirement . . . .  Allowing Plaintiffs to engage in this

tactic would defeat Congress's intent in drafting the FLSA's opt-in requirement."); <u>Brothers v. Portage</u>

Nat'l Bank, Civ. A. No. 06-94, 2007 WL 965835, at *6 (W.D. Pa. Mar. 29, 2007) (dismissing state law

class action claims based on PMWA and WPCL "to the extent Plaintiffs' state-law claims coincide with

the FLSA"); Herring v. Hewitt Assocs., Inc., Civ. A. No. 06-267, 2006 WL 2347875, at *2 (D.N.J. Aug.

11, 2006) (finding New Jersey state law wage/hour class action to be "inherently incompatible" with

FLSA collective action, as it allows plaintiff to "circumvent the opt-in requirement"); Himmelman v.

Cont'l Cas. Co., Civ. A. No. 06-166, 2006 WL 2347873, at *2 (D.N.J. Aug. 11, 2006) (same); Moeck v.

Gray Supply Corp., Civ. A. No. 03-1950, 2006 WL 42368, at *5 (D.N.J. Jan. 6, 2006) (refusing to

certify state law class action based on same reasoning as Herring and Himmelman).[5]

     Moreover, under principles of *res judicata* and collateral estoppel, any determination of liability

in such a PMWA opt-out class claim would bind absent class members with respect to their rights under

the FLSA.  Specifically, because of the substantially similar standards under the PMWA and the FLSA,

any determination under the PMWA necessarily would constitute an adjudication of each individual

class member's rights under the FLSA as well without his consent and thus extinguish any claim under

the FLSA that he may otherwise have been able to bring.  See, e.g., Chao v. A-One Med. Servs., Inc.,

346 F.3d 908, 921-23 (9th Cir. 2003) (concluding that FLSA claim was barred by *res judicata* because

plaintiff had previously litigated state law claim for overtime based on same facts); Tran v. Le French

Baker, Inc., Civ. A. No. 94-0482, 1995 WL 374342, at *2 (N.D. Cal. June 14, 1995) (holding that

plaintiff who had previously been awarded overtime under state law through state administrative

proceeding was collaterally estopped from bringing FLSA claim).

---

[5]    See also Rodriguez v. Texan, Inc., Civ. A. No. 01-1478, 2001 WL 1829490, at *2 (N.D. Ill. Mar. 7, 2001) (observing that congressional intent would be thwarted if plaintiff could "back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement"); Sorensen v. CHT Corp., Civ. A. No. 03-1609, 2004 WL 442638, at *11 (N.D. Ill. Mar. 10, 2004) (observing that "[a]llowing plaintiffs to avoid the FLSA's opt-in procedure simply by omitting a request for collective action and seeking class certification of state law wage claims would arguably subvert" Congressional intent seeking to limit collective actions by requiring written consent to become a party); Madrigal v. Green Giant Co., Civ. A. No. 78-157, 1981 WL 2331, at *14 (E.D. Wash. Jul. 27, 1981)

This kind of unchecked liability is precisely the result that Congress intended to prevent when it amended the FLSA to adopt a comprehensive enforcement scheme that prohibited class actions in favor of collective actions. "Congress created a remedy conditioned with both advantages and disadvantages to the claimant. It would be difficult indeed to find any purpose in that careful process if alternative remedies, varying with the variations of state law were also to be available in any case in which the alternative seemed more advantageous to the plaintiff-employee seeking to enforce his [overtime] rights." Lerwill, 343 F. Supp. at 1029.

In sum, the availability of an opt-out class action to enforce substantively identical state law wholly thwarts Congress' objectives by "interfer[ing] with the methods by which the [FLSA] was designed to reach [its] goal." Int'l Paper, 479 U.S. at 494. Thus, enforcement of the PMWA via an opt-out class action plainly "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Gade, 505 U.S. at 98. Therefore, a cause of action premised on an opt-out class action under the PMWA is impliedly preempted by the FLSA. See, e.g., Rochlin v. Cincinnati Ins. Co., Civ. A. No. 00-1898, 2003 WL 21852341, at *14 (S.D. Ind. July 8, 2003) (concluding that "[t]he procedures set forth in Section 216(b) preempt the class action procedures set forth in Rule 23") (citing King v. Gen. Elec. Co., 960 F.2d 617, 621 (7th Cir. 1992)). As a result, Plaintiffs' PMWA class action claim should be dismissed without prejudice to their individual PMWA claims (or the individual PMWA claims of any absent class member).

The remaining individual wage claims of Plaintiffs under the PMWA should be dismissed for the same reason discussed below as to Plaintiffs' FLSA claims – Plaintiffs have failed to plead a plausible basis for recovery of overtime or minimum wage compensation. See infra Section III.E.

---

(dismissing state law claim as basis for class action, reasoning that, "[i]f such result were permitted, the statutory requirements of the FLSA would be effectively gutted").

**E.** **Plaintiffs Fail to State a Claim Under the FLSA.**

Plaintiffs fail to plead a plausible basis for recovery of purported unpaid minimum wages or overtime pay pursuant to the FLSA and, therefore, Count III of the Amended Complaint should be dismissed.  Even if Plaintiffs were employees protected by the FLSA as they allege, which they are not, this Court will not hesitate to dismiss an FLSA claim for failure to plead facts sufficient to form a basis for relief.  For example, in Killian v. McCulloch, 850 F. Supp. 1239 (E.D. Pa. 1994), this Court held that plaintiff's allegations that "[m]any members of the class are due additional amounts from Nutri/System and defendants for unreimbursed business-related expenses, salary, and other benefits and the failure to pay such amounts constitutes additional violations of the [WPCL]" were insufficient for defendants to form a response because "[t]he complaint does not give Defendants any notice as to whom wages are owed, for what period of time, or what constitutes 'other benefits' and to whom these additional benefits are owed." Id. at 1255 (brackets in original).[6]  "While we do not think Plaintiffs need to list the amounts owed for each member of the class, the complaint needs to be specific enough so that Defendants can formulate a defense."  Id.

Other federal courts also have dismissed FLSA claims where plaintiffs fail to plead specific facts to show they are entitled to relief, as required by the pleading standards outlined by the Supreme Court in Twombly and Iqbal.  See supra Section III.A.  In Gifford v. Meda, No. 09-13486, 2010 WL 1875096 (E.D. Mich. May 10, 2010), the court held (citing Twombly) that plaintiffs "completely failed to allege adequate facts in support of their overtime claim to survive Defendants' motion to dismiss."  Id. at *22. The court criticized the "complete failure to allege that any Plaintiff actually worked overtime, or to provide any supporting documentation for such a claim," which "necessitates dismissal of Plaintiffs' FLSA claims under 12(b)(6)."  Id.  The court wrote:

> A plaintiff's factual allegations, while 'assumed to be true, must do more

---

[6]     In a claim for unpaid wages, the Third Circuit has found the standards under the FLSA and WPCL to be substantially similar.  See De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003).

> than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.'   Thus, '[t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory.'   Plaintiffs' overtime claim is completely unsupported by any factual content and should be dismissed.

Id. (emphasis added).  Similarly, in Harding v. Time Warner, Inc., Civ A. No. 09-1212, 2010 WL 457690 (S.D. Cal. Jan. 26, 2010), the court (again citing Twombly) dismissed the complaint for failing to contain specific factual allegations showing that: (a) plaintiff worked overtime; (b) plaintiff received less than all wages due to him; and/or (c) plaintiff's time records or wage statements were inaccurate. Id. at *5 (citing Villegas v. J.P. Morgan Chase & Co., Civ A. No. 09-00261, 2009 WL 605833, at *5 (N.D. Cal. Mar. 9, 2009) (holding that plaintiff did not allege sufficient facts to support an FLSA claim by pleading only conclusory allegations that plaintiff "did not receive properly computed overtime wages"); see also Zhong v. Aug. Aug. Corp., 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007) (explaining "in order to survive a motion to dismiss . . .  where the plaintiff alleges violations of the FLSA's minimum and overtime wage provisions, the complaint should, at least approximately, allege the hours worked for which these wages were not received" and thus dismissing plaintiff's claim for violation of FLSA § 207); Jones v. Casey's Gen. Stores, 538 F. Supp. 2d 1094, 1102-03 (S.D. Iowa 2008) (finding magistrate erred in granting plaintiffs leave to amend with regard to FLSA minimum wage claim where amended complaint "provides only generic, conclusory assertions of a right to relief under the FLSA minimum wage provisions" and does not plead "a single *factual* allegation that would permit an inference that even one member of the Plaintiffs' collective has 'a right to relief above the speculative level'") (emphasis in original); LePage v. Blue Cross & Blue Shield of Minn., No. 08-584, 2008 WL 2570815, at *2 (D. Minn. June 25, 2008) (because plaintiffs failed to identify their hourly pay rates or any facts that would permit the court to infer that they were actually paid less than the minimum wage required under the FLSA, granting motion to dismiss).

Here, Plaintiffs' FLSA claims are based solely on the following generic allegations:

16

> ➤ "Plaintiffs regularly worked more than 40 hours per week, but did not receive overtime" (Am. Compl. ¶ 99); and

> ➤ "Plaintiffs work from approximately 3:00AM-1:00PM five days per week.  Additionally, Plaintiffs work 2-3 hours on Sundays.  Plaintiffs also work an additional half-hour in the evenings to place orders."  (Am. Compl. ¶ 99).

Although Plaintiffs amended their Complaint to allege the same "approximate" hours worked by all Plaintiffs (which is extremely suspect on its face), they have failed to allege any pay rate or amount or even compensation method (e.g., hourly wages, commissions, or salary) such that the parties and the Court could assess whether Plaintiffs were paid less than minimum wage and/or an applicable overtime rate as claimed.  See LePage, 2008 WL 2570815, at *2 ("Here, like their minimum-wage claim under the FLSA, Plaintiffs have failed to identify their hourly pay rates or any facts that would permit the Court to infer that they were actually paid less than the minimum wage required under the Minnesota FLSA in any workweek. This is not sufficient under Rule 8 or Twombly.").

Without any allegations as to their compensation, there is no plausible basis to suggest that Plaintiffs' compensation fell under the minimum wage rate based on the number of hours they allegedly worked.  Similarly, Plaintiffs offer no allegations as to the method, rate, or amount of their compensation with respect to the overtime claims except to generically allege in a conclusory fashion that they did not receive overtime.  These sparse allegations are particularly suspect considering that BBUSA's initial Motion to Dismiss challenged the extent of Plaintiffs' pleading on these issues and yet Plaintiffs elected not to offer any information in the Amended Complaint as to their alleged compensation.

Furthermore, "where a plaintiff brings an FLSA claim 'for and [o]n behalf of himself … and other employees similarly situated,' the complaint should indicate who those other employees are, and allege facts that would entitle them to relief." Jones, 538 F. Supp. 2d at 1102 (amended complaint's FLSA claim fails under Rule 12(b)(6) and Twombly) (quoting Zhong, 498 F. Supp. 2d at 628).  The

approximate hours worked are alleged only as to Plaintiffs and not those allegedly "similarly situated" –

as to which Plaintiffs make no *factual* allegations – only unsupported conclusion.  <u>See</u> Am. Compl. ¶

99.  As the court in <u>Jones</u> correctly noted in dismissing an FLSA claim, "[t]he Complaint in civil

litigation is not an invitation to an unfettered fishing expedition for evidence of wrongs that *might* have

occurred . . . ."  <u>Id.</u> at 1103 n.4 (emphasis in original).  Plaintiffs' generic, rudimentary averments are

insufficient to form the basis for a viable FLSA claim based on the pleading standards of <u>Twombly</u> and

<u>Iqbal</u>.  Because they have failed to properly plead overtime and minimum wage claims, Plaintiffs'

Count III should be dismissed.

  F.  <u>**Plaintiffs Fail to State a Claim for Negligent Misrepresentation.**</u>

  Plaintiffs' claims for negligent misrepresentation must be dismissed because (i) Plaintiffs fail to

plead sufficient facts as required by Rules 9(b) and <u>Twombly</u>/<u>Iqbal</u>; (ii) the claims sound in contract and

thus are precluded by Pennsylvania's "gist of the action" doctrine; (iii) the parol evidence rule bars

Plaintiffs' claims; and (iv) their claims rest upon the same facts as those in support of their FLSA claims

and thus are preempted.

  1.  **Plaintiffs Fail to Plead Sufficient Facts Under Rules 9(b) and 12(b)(6).**

  Plaintiffs have failed to plead with sufficient factual specificity the elements of their negligent

misrepresentation claims and, therefore, their Count IV should be dismissed.  Plaintiffs have simply

taken their insufficiently-pled "fraud" claim from the initial Complaint and re-labeled it "negligent

misrepresentation" in a misguided attempt to avoid the "particularity" requirements of Federal Rule of

Civil Procedure 9(b).  <u>Compare</u> Compl. Count VI (Docket No. 2) <u>with</u> Am. Compl. Count IV.

Specifically, Plaintiffs allege:

> At all material times, Defendants either knew, or should have known,
> that the material representations made to Plaintiffs concerning their
> employment status, the availability of certain bread products; autonomy
> in determining the profitability of their routes and Plaintiffs
> corresponding obligation to assume responsibility for all of their "own"
> employment related expenses including but not limited to purchasing or

> leasing, operating and maintaining expensive trucks were negligent, false
> **_and fraudulent_**.

Am. Compl. ¶107 (emphasis added).  But re-labeling what is still a fraud claim as "negligent

misrepresentation" does not remove it from the ambit of Rule 9(b) when the essence of the claim is one

for fraud.  This Court has held that the "particularity requirement of Rule 9(b) applies to claims of

negligent misrepresentation."  Hanover Ins. Co. v. Ryan, 619 F. Supp. 2d 127, 142 (E.D. Pa. 2007).  See

also Kester v. Zimmer Holdings, Inc., Civ. A. No. 10-523, 2010 WL 2696467, at **11-12 (W.D. Pa.

June 16, 2010) (dismissing negligent misrepresentation claim pursuant to Rule 12(b)(6) for failing to

allege with particularity as required under Rule 9(b)); Hough/Loew Associates, Inc. v. CLX Realty Co.,

760 F. Supp. 1141, 1145 (E.D. Pa. 1991) (applying Rule 9(b) to Rule 12(b)(6) motion to dismiss

negligent misrepresentation claim).  Indeed, "[a]lthough the language of Rule 9(b) confines its

requirements to claims of mistake and fraud, the requirements of the rule apply to all cases where

the gravamen of the claim is fraud even though the theory supporting the claim is not technically

termed fraud." Toner v. Allstate Ins. Co., 821 F. Supp. 276, 283 (D. Del. 1993) (collecting cases

and noting that Rule 9(b) has been applied to negligent misrepresentation claims); see also Breeden

v. Richmond Cmty. College, 171 F.R.D. 189, 199-202 (M.D.N.C. 1997) (conducting extensive

research on Rule 9(b) and finding that it applies to all claims that sound in fraud, including

negligent misrepresentation, regardless of how they are labeled).

Here, Plaintiffs fail to plead with particularity facts supporting a claim for negligent

misrepresentation under Pennsylvania law,[7] which requires proof of/that:

> (1) a misrepresentation of a material fact; (2) the representor either
> knew of the misrepresentation, made the misrepresentation without
> knowledge as to its truth or falsity or made the misrepresentation
> under circumstances in which he should have known of its falsity; (3)

---

[7]    Even if Rule 9(b)'s "particularity" requirement does not apply, this Court has held that "a plaintiff
must plead negligent misrepresentation _with a degree of specificity_." Floyd v. Brown & Williamson Tobacco
Corp., 159 F. Supp. 2d 823, 834 (E.D. Pa. 2001) (emphasis added) (citation omitted).  As discussed below,
the requisite specificity is lacking here.

> the representor intended the misrepresentation to induce the plaintiff
> to act on it; (4) the plaintiff acted in justifiable reliance on the
> misrepresentation; and (5) injury resulted to the plaintiff..

Horizon Unlimited, Inc. v. Silva, Civ. A. No. 97-7430, 1998 WL 88391, at *4 (E.D. Pa. Feb. 26, 1998)

(citing Gibbs v. Ernst, 647 A.2d 882, 890 (Pa. 1994)).  In particular, Plaintiffs' allegations in support

of their negligent misrepresentation claims do not allege the "date, place and time" of any supposed

misrepresentation by Defendants, as required by Rule 9(b).  See Lum v. Bank of Am., 361 F.3d 217,

224 (3d Cir. 2004), abrogated on other grounds by In re Insurance Brokerage Antitrust Litigation, Nos.

08-1455, 08-1777, 07-4046, 2010 WL 3211147 (3d Cir. Aug. 16, 2010).  Rather, it appears that

Plaintiffs simply now disagree with the explicit terms of the Agreement – i.e., that they are independent

operators/contractors.  See Am. Compl. ¶ 105.  This failure to plead with particularity the circumstances

of an actual misrepresentation is fatal to Count IV of the Amended Complaint.

### 2.    Plaintiffs' Claims Are Barred By the Gist of the Action Doctrine.

Plaintiffs' claims for negligent misrepresentation also are precluded by the gist of the action

doctrine, which bars tort claims

> (1) arising solely from a contract between the parties; (2) where the
> duties allegedly breached were created and grounded in the contract
> itself; (3) where the liability stems from a contract; or (4) where the tort
> claim essentially duplicates a breach of contract claim or the success of
> which is wholly dependent on the terms of a contract.

CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co., 645 F. Supp. 2d 354, 377 (E.D. Pa. 2009) (holding

that "[b]ecause the liability that Defendant [sic] is attempting to impose on Defendant would not exist

absent a valid contract, the claim is purely contractual").  "In other words, if the duties in question are

intertwined with contractual obligations, the claim sounds in contract . . . ."  Id. (citation omitted).  As

this Court has explained, "[w]here pre-contractual statements that are the basis for the fraudulent

inducement claim concern specific duties that the parties later outlined in the contract, courts have

repeatedly dismissed such claims as sounding in contract and, thus, barred by the gist of the action

doctrine." Id. at 378 (citing Asbury Auto. Group LLC v. Chrysler Ins. Co., Civ. A. No. 01-3319, 2002 WL 15925, at *3 (E.D. Pa.. Jan. 7, 2002)).

In fact, the Third Circuit has specifically rejected a negligent misrepresentation claim based on this doctrine. See Bishop v. GNC Franchising LLC,  248 F. App'x 298, 299, 2007 WL 2390427, at *2 (3d Cir. 2007) (finding that the gist of the action doctrine precluded plaintiff from bringing fraud and negligent misrepresentation claims where those claims were based on the same contractual duties the defendant allegedly breached).  See also De Lage Landen Fin. Servs., Inc. v. Barton Nelson, Inc., Civ. A. No. 08-530, 2008 WL 4791891, at **6-7 (E.D. Pa. Nov. 4, 2008) (dismissing fraudulent inducement claim where the alleged pre-contractual misrepresentations were directly addressed by the written contract); Tier1 Innovation, LLC v. Expert Tech. Group, LP, Civ. A. No. 06-4622, 2007 WL 1377664, at *4 (E.D. Pa. May 8, 2007) (dismissing allegations of fraud in the inducement and negligent misrepresentation on grounds that they were both "inextricably intertwined" with the alleged failure to perform under the contract, as the claims pertained to representations regarding party's expertise and ability to perform its duties under the agreement); Penn City Invs., Inc. v. Soltech, Civ. A. No. 01-5542, 2003 WL 22844210, at **3-5 (E.D. Pa. Nov. 25, 2003) (granting summary judgment on fraudulent inducement claim based on pre-contractual discussions regarding specific duties that were directly addressed by the written contract); Horizon Unlimited, 1998 WL 88391, at **4-5 (holding that gist of the action doctrine barred fraud and negligent misrepresentation claims premised on allegedly false statements made in promotional literature about the product when the subsequent contract disclaimed any prior representations); Factory Mkt., Inc. v. Schuller, Inc., 987 F. Supp. 387, 394-95 (E.D. Pa. 1997) (concluding that gist of the action doctrine barred fraud claims against roofer who agreed and repeatedly attempted to repair a chronically leaking roof, even though he knew from the outset that it was beyond repair, as the obligation to make the roof watertight was imposed by the contract); Phico Ins. Co. v. Presbyterian Med. Serv. Corp., 444 Pa. Super. 221, 229-30 (1995) (holding that while there were

individual allegations of tortious activity in the complaint, the underlying complaint as a whole sounded in contract).  The result is proper here.

As they have failed to allege any verbal misrepresentations, it is clear that Plaintiffs' negligent misrepresentation claims are based upon the contractual terms of their Agreements.  Indeed, in the first averment for their negligent misrepresentation claims, Plaintiffs allege:

> Plaintiffs were purportedly hired by Defendant to work as "independent contractors" and/or "independent operators" pursuant to the terms of the Distribution Agreements described above.  In fact, Defendants knew or should have known, at all times, that the "independent contractor" and/or "independent operator" classification in the Distribution Agreement was improper and that Plaintiffs and all other similarly-situated person were "employees" entitled to the benefits and protections of all laws enacted for employees.

Am. Compl. ¶105.  At bottom, Plaintiffs are alleging that they were provided with something by Defendants other than what they contracted for in the Agreements – i.e., receiving an employment relationship rather than an independent contractor relationship.  That theory falls squarely within the ambit of the gist of the action doctrine because it is intertwined with the Agreement.  As such, Plaintiffs' negligent misrepresentation claim should be barred.  See Wheeler v. Beard, Civ. A. No. 03-4826, 2005 WL 1217191, at **9-10 (E.D. Pa. May 19, 2005) (dismissing negligent misrepresentation claim pursuant to gist of action doctrine); Horizon Unlimited, 1998 WL 88391, at *5 (same).

### 3.   Plaintiffs' Claims Are Barred By the Parol Evidence Rule.

Even if Plaintiffs were to seek to avoid the gist of the action doctrine by now pointing to some alleged oral statement to them regarding the Agreements, see Am. Compl. ¶¶ 106-108, the misrepresentation claims would be barred by the parol evidence rule:

> Where the parties to an agreement adopt a writing as the final and complete expression of their agreement, as here, evidence of negotiations leading to the formation of the agreement is inadmissible to show an intent at variance with the language of the written agreement. Alleged prior or contemporaneous oral representations or agreements concerning subjects that are specifically dealt with in the written contract are merged in or superseded by that contract. The effect of an integration clause is to

> make the parol evidence rule particularly applicable. Thus the written
> contract, if unambiguous, must be held to express all of the negotiations,
> conversations, and agreements made prior to its execution, and neither
> oral testimony, nor prior written agreements, or other writings, are
> admissible to explain or vary the terms of the contract.

Audiotext Int'l, Ltd. v. Spring Commc'ns Co., Civ. A. No. 03-2110, 2006 WL 1490129, at *3 (E.D. Pa.

May 26, 2006) (citations omitted).  Thus, where an agreement contains a complete integration clause, a

plaintiff cannot plead a claim based on alleged pre-contract misrepresentations.  See, e.g., Charlton v.

Gallo, Civ. A. No. 09-2447, 2010 WL 653155, at **3-4 (E.D. Pa. Feb. 19, 2010) (dismissing claim

based on pre-contract representations because of complete integration clause in agreement); Sheinman

Provisions, Inc v. Nat'l Deli, LLC, No. 08-453, 2008 WL 2758029, at *3 (E.D. Pa. July 15, 2008)

(same); Audiotext Int'l, 2006 WL 1490129, at *4 (same); Quorum Health Res., Inc. v. Carbon-

Schuylkill Cmty. Hosp., Inc., 49 F. Supp. 2d 430, 432-33 (E.D. Pa. 1999) (same).  Here, the Plaintiffs'

Agreements each contain a complete integration clause,[8] so any assertion that they were misled as to the

meaning of the terms of the Agreement would be barred by the parol evidence rule.

### 4.    Plaintiffs' Claims Are Preempted By the FLSA.

Finally, Plaintiffs' claims for negligent misrepresentation are preempted to the extent that they

are what appear to be a mere recitation of their FLSA claims for overtime and minimum wage

compensation.  See Ellis v. Edward D. Jones & Co., L.P. , 527 F. Supp. 2d 439, 454 (W.D. Pa. 2007)

(dismissing common law claim as preempted by FLSA because grounded on the same facts); Moeck,

Civ. A. No. 03-1950, 2006 WL 42368 (holding that claims alleging misrepresentations of eligibility

for overtime were "merely based on Plaintiffs' overtime claims" and thus "preempted by the FLSA");

---

[8]     "This Agreement, together with the Bill of Sale referred to in § 11.3 above and any other agreements
executed between the parties on even date herewith, sets forth the entire agreement between the parties and
supersedes all prior agreements, discussions, negotiations, understandings, representations, conditions,
warranties and covenants between them with respect to this subject matter.  Unless set forth herein, neither
party shall be liable for any representation made to the other.  This Agreement may be amended or modified
only by a writing signed by both parties." Exh. A ¶ 11.4; see also Exh. B ¶ 11.4; Exh. C ¶ 11.4; Exh. D ¶ 11.4;
Exh. E ¶ 11.4; Exh. F ¶ 11.4 Exh. G ¶ 11.4; Exh. H ¶ 18; Exh. I ¶ 19; Exh. J ¶ 11.4; Exh. K ¶ 11.4.

Johnston v. Davis Sec., Inc., 217 F. Supp. 2d 1224, 1227-28 (D. Utah 2002) (holding that common law claims based on the "same facts and circumstances" as the FLSA claims "do not give rise" to separate actions); Petras v. Johnson, Civ. A. No. 92-8298, 1993 WL 228014, at *3 (S.D.N.Y. Jun. 22, 1993) (dismissing fraud claim as preempted by FLSA); Alexander v. Vesta Ins. Group, Inc., 147 F. Supp. 2d 1223, 1240-41 (N.D. Ala. 2001) (refusing to consider common law claims that merely "recast . . . FLSA overtime claims").

Here, central facts that are alleged in support of Plaintiffs' FLSA claims also are alleged in support of their negligent misrepresentation claims. For instance, Plaintiffs support their negligent misrepresentation claims by alleging that the independent contractor and/or independent operator classification in the Agreements was improper and Plaintiffs "were 'employees' entitled to the benefits and protections of all laws enacted for employees," Am. Compl. ¶105, and "Defendants negligently misled Plaintiffs as to their employment status . . . ," Am. Compl. ¶ 106. Moreover, Plaintiffs assert that "Defendants are guilty of negligent misrepresentation for failing to take reasonable care in communicating to Plaintiffs that . . . Plaintiffs would be treated as employees." Am. Compl. ¶ 108. For these alleged misrepresentations as to contractor status, Plaintiffs seek recovery of, inter alia, unpaid wages and overtime just as they seek such remedies under the FLSA, PMWA and WPCL for alleged misclassification as contractors.

Similarly, Plaintiffs' wage claims, including those under the FLSA, are based upon their allegations that "[a]s a consequence of Defendants' misclassification, Plaintiffs were denied statutory minimum wage and have suffered and continue to suffer actual ascertainable losses by virtue of Defendants misclassification of them as independent contractors and/or operators and illegal deductions from their wages." Am. Compl. ¶ 91. In fact, the third paragraph in Plaintiffs' Amended Complaint, which sets forth a purported summary of all the alleged claims, notes that all the causes of action (including under the FLSA) stem from Defendants' "negligent misrepresent[ation]":

> Specifically, Bimbo **negligently misrepresented** to the named Plaintiffs and Class Members (collectively, "Plaintiffs") that Plaintiffs would be independent operators of their own business separate and apart from Bimbo if Plaintiffs were to purchase a delivery truck, purchase the "distribution rights" to a defined sales area, insure and maintain that truck, purchase a Norand Handheld Computer and a Norand Van Mounted Printer and deliver baked goods for Bimbo.  By virtue of Bimbo's **representations** as well as making the foregoing purchases, Plaintiffs in fact believe that they would own their own businesses and that they would have proprietary interests in the defined sales area for which they contracted.  The **representations** made by Bimbo were false.

Am. Compl. ¶ 3 (emphasis added).  In sum, all of Plaintiffs' claims – including those for negligent misrepresentation and for relief under the FLSA – are based upon Plaintiffs' assertion that they have been treated like employees rather than independent contractors.  Because Plaintiffs' misrepresentation claims rely upon the same alleged facts supporting their FLSA claims, they are preempted and should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed, with prejudice, in its entirety.

Dated:  October 1, 2010

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ Michael J. Puma
　　　Michael J. Puma
　　　Sean W. Sloan
1701 Market Street
Philadelphia, PA  19103
(215) 963-5000
(215) 963-5001 (fax)

*Counsel for Defendants Bimbo Bakeries USA, Inc.
and Bimbo Foods Bakeries, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Michael J. Puma, hereby certify that on October 1, 2010, I caused to be served via ECF and hand delivery the Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, together with the supporting Memorandum of Law (and Exhibits A-K thereto) and proposed Order, upon the following:

>J. Edward McCain III, Esquire
>Zakia E. Moore, Esquire
>The Law Offices of J. Edward McCain III
>912 N. 29th Street
>Philadelphia, PA 19130
>jmccain@mccain-law.com
>zmoore@mccain-law.com
>
>*Counsel for Plaintiffs*

>/s/ Michael J. Puma
>Michael J. Puma