IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **QUINN F. SCOTT, et al.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **BIMBO BAKERIES, USA, INC., and** | : | **No. 10-3154** |
| **BIMBO FOODS BAKERIES, INC.** | : | |

Goldberg, J.                                                                                           December 11, 2012

**MEMORANDUM OPINION**

      The current dispute in this Fair Labor Standards Act ("FLSA") case involves the vastly different proposals the parties have submitted regarding the appropriate amount of discovery on the issue of final certification of the proposed class. Defendants suggest that in order to properly prepare their opposition to final certification, they must serve discovery on every opt-in Plaintiff. Because discovery of this scope would be incredibly time consuming and costly, we have taken the time to carefully examine Defendants' position and the precedent it suggests supports such expansive discovery on what we view to be a fairly straightforward and narrow issue.

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

      On September 20, 2012, Plaintiffs, Quinn F. Scott, Ronald Sochacki, William J. Davenport, III, Robert Dando, Sr., Kevin Kazarnowicz, on behalf of themselves and all others similarly situated ("Plaintiffs"), filed an amended complaint against Defendants, Bimbo Bakeries USA, Inc. and Bimbo Foods Bakeries, Inc. ("Defendants"), alleging violations of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 201 et seq. and the Pennsylvania Minimum Wage Act ("PMWA"), 43 PA. CON. STAT. §§ 333.101 et seq.[1]

Plaintiffs deliver fresh baked goods for Defendants nationwide, pursuant to Distribution Agreements that identify Plaintiffs as "independent contractors." Plaintiffs claim that, although they are classified as "independent contractors," Defendants control and manage their work and thereby treat them as their "employees." Plaintiffs contend that under Defendants' alleged "nationwide policy" of mis-classifying their drivers in this manner, they were denied certain rights, privileges, and benefits owed to "employees" under the law. (Am. Compl. ¶¶ 21, 28-48.)

This case has a contentious history, necessitating frequent court intervention to resolve a variety of disputes, with both parties seeking sanctions against the other. In November 2010, the parties submitted a proposed discovery plan regarding Plaintiffs' motion for conditional certification, and after much discussion, a limited scheduling order was put in place. (Doc. Nos. 22, 36.) At the conclusion of this discovery period, Plaintiffs filed a motion for conditional certification on their FLSA claim, which was granted. (Doc. No. 83). In conditionally certifying the collective action, we found that Plaintiffs had established the "modest factual showing" of a "factual nexus between the manner in which the employer's alleged policy affected [them] and the manner in which it affected other employees." Defendants promptly filed for reconsideration of this ruling and after oral argument, Defendants' motion to reconsider was denied on April 24, 2012. The parties subsequently submitted joint proposed "Notice" and "Consent" forms, which the Court approved. (See Doc. No.

---

[1] Plaintiffs also initially brought claims under the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 PA. CON. STAT. §§ 260.1 et seq., as well as a claim for negligent misrepresentation. However, these additional claims were dismissed by this Court's Order of February 29, 2012. (Doc. No. 83.)

2

101.) The notice period for opt-in Plaintiffs ended on October 15, 2012. Currently there are at least 650 opt-in Plaintiffs.[2]

The class of Plaintiffs, as set forth in the Notice of Lawsuit sent to potential opt-in Plaintiffs, is defined as follows: "All Independent Operators [ ] who have or have had a distribution agreement with Bimbo Foods Bakeries Distribution, Inc., Bimbo Bakeries Distribution Company, Ltd., Arnold Sales Company, Inc., or Bimbo Bakeries USA, Inc., at any time within the last three years." (Doc. No. 100 Ex. A.) As set out more fully infra, the scope of discovery at issue involves whether the Plaintiffs are "similarly situated" under the meaning of 29 U.S.C. § 216(b). The parties were ordered to meet and confer on this issue and present a proposed discovery plan to the Court, a draft of which was submitted on September 18, 2012. (Doc. No. 120) (hereinafter "Plan.") The parties' submissions regarding the proper amount of discovery differ in almost every respect, including topics of inquiry, the amount of written discovery and the number of depositions.

Regarding the topics or issues to be covered, Plaintiffs suggest that the next discovery phase be limited to the issue of decertification. In reviewing the Joint Proposed Discovery Plan, Defendants' position is not as clear and it is difficult to discern whether Defendants recommend that the next phase of discovery involve only the issue of decertification or more expansive merits discovery. For instance, Defendants suggest a discovery deadline for "all fact discovery preceding Defendants' motion to deny final certification of the collective action, subject to an additional period

---

[2] Despite the fact that simple counting is involved, the attorneys cannot agree on the number of persons who have submitted valid opt-in forms. Plaintiffs suggest that number is 715, which includes five named Plaintiffs. Defense counsel disputes this number, instead suggesting that there are 650 opt-in Plaintiffs due to duplicative and delayed consent forms. We need not decide this issue at this time and for the purposes of this Opinion, we will use the number provided by Defendants.

of pre-trial merits discovery," but earlier in its submission Defendants request discovery on a "non-exhaustive list of subjects" which includes "the allegations contained in Plaintiffs' Amended Complaint." (Plan, pp. 2-3.) In any event, defense counsel agreed during a subsequent phone conference that the next phase of discovery should be limited to the issue of final certification.

Regarding written discovery, Plaintiffs agree that "written discovery may be served on each named Plaintiff," but seek to limit written discovery to "a representative number of opt-ins, not to exceed 10% of the final total of opt-ins," allowing for a sixty-day response period. Defendants, on the other hand, seek to "serve each named and opt-in Plaintiff with written discovery demands during the discovery period preceding a ruling on final certification," allowing thirty days for Plaintiffs to respond. (Id., pp. 4-5.) Thus, in terms of raw numbers, and using Defense counsel's representation regarding the number of opt-ins, Defendants urge that service of interrogatories to 650 separate opt-ins is appropriate, while only allowing Plaintiffs thirty days to respond.

With regard to depositions, Plaintiffs agree that all named Plaintiffs may be deposed, but seek to limit Defendants to "no more than 15 additional depositions, with such deponents to be selected by agreement by the parties from the representative sample." Defendants disagree and seek to depose each named Plaintiff, and "no more than 40% of the opt-in Plaintiffs in order to develop a record for the Court to address final certification." The parties agree that depositions shall be limited to five hours of testimony. (Id., pp. 5-6.) Thus, Defendants take the position that they can only obtain a fair representation of whether the opt-in Plaintiffs are similarly situated through the taking of 260 depositions. If Plaintiffs' counsel is correct and the number of opt-ins is 710, defense counsel urges that 284 depositions are necessary.

Given these differences, and what initially appeared to the Court to be entirely unreasonable

requests by Defendants, a telephone conference was held on October 3, 2012. During this conference we expressed our concern that Defendants' discovery strategy seemed designed to overwhelm Plaintiffs' counsel rather than to fairly obtain necessary information for a very focused and discrete issue. Defense counsel disagreed and took the position that most courts who had considered this issue had allowed discovery exactly as Defendants have proposed.

Upon careful review of the cases cited by defense counsel, we find his position to be incorrect and the discovery plan suggested by Defendants to be excessive, and designed to overburden Plaintiffs rather than a genuine attempt to obtain full and fair discovery. For the reasons discussed <u>infra</u>, we will adopt Plaintiffs' proposed limitations on the scope of discovery, written discovery and depositions.

## II.     **DISCUSSION**

### A.     **General Scope of Discovery**

Generally, courts have broad discretionary powers in defining the contours of discovery, and may limit the scope and amount of discovery that parties may receive. See FED. R. CIV. P. 26(b). A court must limit discovery "if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or expensive . . . [or if] the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C).

Here, the scope of discovery is confined to the issue of final certification. "In deciding whether a suit brought under § 216(b) may move forward as a collective action, courts typically

employ a two-tiered analysis." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 192 (3d Cir. 2011). First, plaintiffs will seek conditional certification, which applies a "fairly lenient standard . . . requir[ing] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." Zavala v. Wal Mart Stores, Inc., 691 F.3d 527, 535 (3d Cir. 2012) (citations omitted). If this burden is met, the courts will conditionally certify the collective action "for the purposes of notice and pretrial discovery." Symczyk, 656 F.3d at 192.

After conditional certification and notice, a defendant will have the opportunity to file a motion to decertify the collective action, where the question will be whether plaintiffs can demonstrate by a preponderance of the evidence that all plaintiffs are "similarly situated." Zavala, 691 F.3d at 535-36. At this stage, the courts consider a number of factors, including: "1) disparate factual and employment settings of the individual plaintiffs; 2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] 3) fairness and procedural considerations." Lugo v. Farmer's Pride Inc., 737 F. Supp. 2d 291, 300 (E.D. Pa. 2010) (quoting Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2011)).

With this test in mind, we disagree with Defendants that the scope of discovery should include a long, "non-exhaustive list of subjects," that would investigate the merits of Plaintiffs' claims. (Plan, p. 2.) Noting that courts "enjoy considerable discretion in determining how to structure discovery . . . , how to manage the briefing of motions that bear upon questions of decertification, and what factors are relevant to consider in resolving such motions," we find this non-exhaustive list of topics to be too broad. Craig v. Rite Aid Corp., 2012 WL 279647, at *6 (M.D. Pa., Jan. 31, 2012). Discovery on this expansive list of topics should be addressed during the next phase of discovery, after a motion to decertify has been brought and decided. Therefore, we adopt

Plaintiffs' position on the scope of fact discovery in this next phase:

> Discovery is anticipated to be completed in phases as was begun with conditional certification. Discovery is now anticipated on the issue of final certification to determine if the named Independent Operators (IO's) are similarly situated to the nationwide class of opt-in IO's so as to maintain a collective action under the FLSA. Discovery during this phase should be limited to the issue of final certification as defined within this Court's jurisdiction.

(Plan, p. 2.)

### B. Written Discovery

Despite defense counsel's insistence that most courts have granted written discovery on each FLSA opt-in Plaintiff as a matter of course, we find that the district courts are split on this issue.

Given the nature of FLSA collective actions, wherein plaintiffs opt-in as opposed to opt-out, courts have come to different conclusions as to whether these opt-in plaintiffs should be treated as ordinary party plaintiffs, who are subject to full discovery. Smith v. Lowe's Home Centers, Inc., 236 F.R.D. 354, 357 (S.D. Ohio 2006). Some courts have permitted, and even seemed to require, individualized discovery on all opt-in plaintiffs. See e.g., Scovil v. FedEx Ground Package Sys., Inc., 2011 WL 5526033 (D. Me., Nov. 14, 2011); Stickle v. SCI Western Market Support Center, L.P., 2010 WL 3218598 (D. Ariz., Aug. 13, 2010); Abubakar v. City of Solano, 2008 WL 508911 (E.D. Cal., Feb. 22, 2008); Coldiron v. Pizza Hut, Inc., 2004 WL 2601180 (C.D. Cal., Oct. 25, 2004).

However, numerous other courts have found that FLSA collective actions should be "governed by the same standards as govern discovery in Rule 23 class actions and should be limited to only class wide and class based discovery." Smith, 236 F.R.D. at 357; see also, Kress v. Price Waterhouse Coopers, 2012 WL 4465556 (E.D. Cal., Sept. 25, 2012); Gentrup v. Renovo Svcs., LLC,

2010 WL 6766418 (S.D. Ohio, Aug. 17, 2010); Bradford v. Bed Bath & Beyond, Inc., 184 F. Supp. 2d 1342 (N.D. Ga. 2002). Defendants failed to bring these cases to our attention.

The United States Court of Appeals for the Third Circuit has no definitive rule on this issue. However, district courts within this Circuit have routinely limited discovery to a representative sample of opt-in plaintiffs in FLSA actions. See Craig v. Rite Aid Corp., 2012 WL 279647, at *6 (M.D. Pa., Jan. 31, 2012) (noting that discovery was conducted on a representative sample of opt-ins); Kuznyetsov v. West Penn Allegheny Health Sys., Inc., 2011 WL 6372852, at *1 (W.D. Pa., Dec. 20, 2011) (noting that discovery was conducted on a sample of 75 out of a total of 824 plaintiffs); Camesi v. University of Pittsburgh Med. Ctr., 2010 WL 2104639, at *11 (W.D. Pa., May 24, 2010) (instructing the parties to take discovery on a representative sample of opt-in plaintiffs).

We also note that most of the cases cited by Defendants are distinguishable from the present situation.

The only case from within the Third Circuit that Defendants cite to support their position is Evans v. Lowe's Home Centers, Inc., 2005 WL 2100708, *1 (M.D. Pa., Aug. 25, 2005), which notes that individualized written discovery for all 508 opt-in plaintiffs was permitted. However, that decision does not explain why the extensive discovery was allowed, nor does it state why such discovery was required. In fact, a careful examination of Evans contradicts Defendants' assertion that such discovery is necessary. Evans addressed the issue of whether 113 opt-in plaintiffs should be dismissed from the action for failing to respond to defendant's discovery requests. In conducting its analysis, the court considered whether prejudice had resulted from the plaintiffs' failure to respond. The court found that "failure of individual plaintiffs to respond in a class-action such as this does not prejudice the defendant in the preparation of its case." Evans, 2005 WL 2100708, at

8

*2 (M.D. Pa. Aug. 29, 2005) (emphasis added).

Additionally, of the nine district court cases cited by Defendants, six are easily distinguishable as having significantly fewer opt-in plaintiffs than the 650 in the case at hand. See Scovil, 2011 WL 5526033 (40 opt-in plaintiffs); Abubakar, 2008 WL 508911 (160 opt-in plaintiffs); Renfro v. Spartan Computer Svcs, Inc., 2008 WL 474253 (D. Kan., Feb. 19, 2008) (over 100 opt-in plaintiffs); Coldiron, 2004 WL 2601180 (306 opt-in plaintiffs); Krueger v. N.Y. Tel. Co., 163 F.R.D. 446 (S.D.N.Y. 1995) (162 opt-in plaintiffs); Kaas v. Pratt & Whitney, 1991 WL 158943 (S.D. Fla., Mar. 18, 1991) (approximately 100 opt-in plaintiffs).

The remaining two cases relied upon by Plaintiffs, Stickle and Morgan, contain very large numbers of opt-in plaintiffs—1,400 and 2,100 respectively. However, the order cited to in Morgan provides no discussion as to why written discovery was allowed for each opt-in plaintiff. Morgan v. Family Dollar Stores, Inc., Dkt. No. 01-cv-0303, Doc. No. 169 (N.D. Ala., Mar. 16, 2004). The Stickle court did not find the large number of interrogatories overly burdensome, because after review, such interrogatories only required answering eleven straightforward questions in small boxes. Stickle, 2010 WL 3218598, at *1 (D. Ariz., Aug. 13, 2010).

FLSA cases from other circuits that have analyzed requests for individual discovery have reasoned that discovery on a representative sample is more appropriate in an FLSA action. For example, in Smith v. Lowe's Home Centers, Inc., 236 F.R.D. 354, 357-58 (S.D. Ohio 2006), the court found that "limiting discovery to a statistically significant representative sampling . . . will both reasonably minimize the otherwise extraordinary burden imposed on the plaintiffs and their counsel and yet afford the defendant a reasonable opportunity to explore, discover, and establish an evidentiary basis for its defenses." See also Gentrup v. Renovo Svcs., LLC, 2010 WL 6766418, at

9

\*7 (W.D. Ohio, Aug. 17, 2010) (citing Smith and choosing to use a representative sample for discovery in an FLSA action brought by independent contractors).

We are persuaded by the reasoning presented in Smith, which favors representative sampling during discovery in FLSA actions. Written discovery propounded upon a representative sampling of opt-in Plaintiffs appropriately balances the needs of Defendants and also takes into account the burden to Plaintiffs and their counsel, a factor that seems to be ignored by Defendants. Accordingly, we find that Plaintiffs' proposed limitation that interrogatories may be served on no more than ten percent of the final total of opt-ins would adequately strike this balance. Responses and objections to written discovery shall be returned within 60 days.

**C.** **Depositions**

Defendants argue that they should be able to depose forty percent of the opt-in Plaintiffs of record, while Plaintiffs seek to limit depositions to the five party Plaintiffs with no more than fifteen additional depositions. Both parties agree that depositions be limited to five hours.

We find Defendants' position on the number of depositions to be entirely unreasonable. Assuming that each deposition lasts five hours, Defendants' proposal would result in 1300 hours of deposition time, which would require 162.5, eight-hour work days to complete. This number is completely unnecessary, would likely result in duplicative data and would place an incredible burden upon plaintiffs' counsel. Considering the principles discussed in Smith, we find Plaintiffs' suggested limitation of deposing no more than fifteen opt-in Plaintiffs to be appropriate. A total of twenty depositions should more than meet Defendants' needs in determining whether the Plaintiffs are similarly situated for the purposes of preparing a motion to decertify.

V.       **CONCLUSION**

For the foregoing reasons, we find Defendants' discovery requests to be unreasonable and overly burdensome.  A discovery schedule follows which takes into account the Defendants' right to obtain necessary information while also considering the burdens involved.  Discovery is to commence on the issue of whether the proposed opt-in class is similarly situated.

Our Order follows.