IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUINN F. SCOTT, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | No. 10-3154 |
| BIMBO BAKERIES USA, INC., et al., | : | |
| | : | |
| Defendants. | : | |

Goldberg, J.                                                  December 15, 2015

## MEMORANDUM OPINION

The issue presented in this case is whether the broad language of the "Released Claims" provision in the parties' Collective Action Settlement Agreement bars one of the Class Plaintiffs from individually asserting claims for breach of contract in the District of New Jersey.

Class Plaintiff, Robert K. Dando, Jr. ("Dando"), was an opt-in plaintiff in the above-captioned collective action litigation ("Scott litigation").[1] That case involved allegations that Defendants, Bimbo Bakeries USA, Inc. and its affiliates (collectively, "Bimbo Bakeries"), were liable to Class Plaintiffs for violations of the Fair Labor Standards Act ("FLSA") and other state minimum wage and overtime laws. The parties eventually settled, and I approved the Collective Action Settlement Agreement on March 5, 2014. That agreement contained a provision that released certain claims stemming from the Distribution Agreements between Class Plaintiffs and Defendants.

After I approved the Scott Settlement Agreement, Dando individually filed claims for breach of contract and other business torts against Defendants in New Jersey state court alleging

---

[1] Robert Dando, Sr. was a Named Plaintiff in the Scott litigation. Any reference to "Plaintiff" or "Dando" in this opinion refers only to Robert K. Dando, Jr.

that Defendants "swindled" him out of approximately $79,900 when they exercised their right of first refusal under the terms of the parties' Distribution Agreement ("Dando litigation"). Defendants removed Dando's case to federal court and eventually filed a motion for summary judgment, arguing that Dando's individual claims were barred by the "Released Claims" provision of the Scott Settlement Agreement. The Honorable Noel L. Hillman of the District of New Jersey denied summary judgment, finding that Dando's individual claims did not share an "identical factual predicate" with the Scott allegations. Judge Hillman stayed his decision so that the parties could seek a ruling from this Court regarding the "Released Claims" provision in the Scott settlement.

This matter came before me through the parties' letter briefs relating to the scope of the "Released Claims" provision in the Scott settlement.[2] Defendants argue that Dando's individual claims are covered under the release and thus barred. Plaintiff responds that his individual breach of contract claims are not barred because they fall outside the scope of the release. Because I conclude that the breach of contract allegations raised by Dando in the District of New Jersey do not share an "identical factual predicate" with the underlying FLSA allegations in Scott, I will deny Defendants' motion, and allow Dando's claims to proceed before Judge Hillman.

---

[2] The letter briefs have been docketed. (See Doc. Nos. 181, 182.) Because the parties renew the summary judgment positions that they raised before Judge Hillman, I could construe Defendants' letter brief as a motion for summary judgment, and Dando's letter brief as a response in opposition to summary judgment. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party, and a factual dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011).

Defendants' letter brief is probably more appropriately characterized as a motion to enforce settlement. The standard of review, however, remains the same. See Tiernan v. Devoe, 923 F.2d 1024, 1031 (3d Cir. 1991) (noting that a motion to enforce settlement "closely resembles" a motion for summary judgment, and is therefore subject to the same standard of review).

## I.     FACTUAL AND PROCEDURAL HISTORY

### a.   *The Scott Litigation*

The FLSA collective action in Scott involved claims by independent truck drivers who alleged that Defendants owed them minimum wage and overtime pay under the FLSA, 29 U.S.C. § 201, et seq., and related Pennsylvania statutes. Scott v. Bimbo Bakeries, USA, Inc., WL 645905 (E.D. Pa. Feb. 29, 2012). Class Plaintiffs delivered fresh baked goods nationwide for Defendants pursuant to Distribution Agreements that identified the drivers as "independent contractors." Id. at 1. Class Plaintiffs alleged that they were improperly classified as independent contractors when in actuality they were Defendants' employees, and were therefore entitled to the "privileges and benefits" owed to employees under the FLSA. (Am. Compl. ¶¶ 21, 28–48.) More specifically, Class Plaintiffs alleged that Defendants' managers exercised "extensive supervisory and disciplinary control" over Class Plaintiffs, and further required them to work in excess of forty (40) hours per week without overtime pay. Scott, 2012 WL 645905, at *1 (citing Am. Compl. ¶¶ 35, 37, 44–47, 59, 63–67.)

After a lengthy discovery process, the parties settled, and submitted a "Stipulation of Settlement," which I approved on March 5, 2014. (See Doc. Nos. 169-2, 174.) Dando had opted into the Scott class and received notice of the settlement. Dando did not, however, sign a Release Form once the settlement had been approved, nor did he collect the $900 claimable by each Current Independent Operator under the terms of the Settlement Agreement.[3]

---

[3] This information was obtained from counsel after I inquired as to whether Dando signed a Release Form as outlined in Paragraph 1.18 of the Settlement Agreement. Had he signed a Release Form, the execution date would have controlled the date through which he potentially released any claims relating to his Distribution Agreement. If he did not sign a Release Form, however, the date of the Approval Order (March 5, 2014) would be the controlling date. After I sought this information, counsel for Mr. Dando replied with a succinct email answering my straightforward factual question as to whether Dando had individually signed a release. Defense counsel submitted a rather lengthy response in an apparent attempt to supplement his letter brief. Counsel for Mr. Dando appropriately objected to defense counsel's email

**b.** ***The <u>Dando</u> Litigation***

The events surrounding the <u>Dando</u> litigation allegedly occurred on March 2, 2014—approximately three days before I approved the <u>Scott</u> Settlement Agreement. Dando avers that he received a verbal offer from a third party for $289,900 to purchase his exclusive distribution rights to sell Defendants' products in a designated geographic territory. Pursuant to the terms of his Distribution Agreement with Defendants, Dando claims that Defendants "informed him that the price was too high and claimed the right to approve the sale." Dando then allegedly lowered the sale price to $210,000, and again presented this figure to Defendants stating that he intended to sell the distribution rights to the same third party. At that point, Defendants allegedly exercised their right of first refusal to purchase the distribution rights to Plaintiff's route for $210,000. <u>See</u> <u>Dando v. Bimbo Food Bakeries Distribution, LLC</u>, WL 5770014, at *1 (D.N.J. Sept. 30, 2015).

**c.** ***"Released Claims" Provision of the <u>Scott</u> Settlement Agreement***

Paragraph 1.18 of the <u>Scott</u> Settlement Agreement contains the language at issue:

> "Released Claims" means any and all claims, demands, causes of action, fees and liabilities of any kind whatsoever, whether known or unknown, whether contingent or non-contingent, specifically asserted or not … up to and including the date of the Approval Order … that could have been asserted in the Civil Action based on the factual allegations therein, <u>that otherwise arise out of, related to, or in connection with, [his] Distribution Agreement, or</u> that arise under the Fair Labor Standards Act ("FLSA") or any other state or local wage/hour payment statute/ordinance, for any type of relief[.]

(Settlement Agreement 6, ¶ 1.18) (emphasis added).

Defendants urge that the plain text and disjunctive phrasing of the operative language act as a complete bar to <u>any</u> claims Dando had arising out of, related to, or in connection with his

---

response. I note that the only portion of defense counsel's email response that I considered was the following sentence, "… Robert Dando Jr. did not execute a Release Form in the <u>Scott</u> matter."

Distribution Agreement up through March 5, 2014. In other words, because the alleged breach of contract occurred on March 2, 2014, and my Approval Order was dated March 5, 2014, Defendants argue that <u>any</u> claim Dando had against Defendants stemming from his Distribution Agreement was effectively released once the Approval Order had been entered. Dando responds that the New Jersey breach of contract case lacks the necessary "identical factual predicate," and therefore, his claims are not barred by the <u>Scott</u> release. The issue now presented is whether the language of Paragraph 1.18 effectively released Dando's breach of contract claims such that they are barred from adjudication.[4]

## II.   __ANALYSIS__

A release covers "only those matters which may fairly be said to have been within the contemplation of the parties when the release was given." <u>Bowersox Truck Sales & Serv., Inc. v. Harco Nat. Ins. Co.</u>, 209 F.3d 273, 279 (3d Cir. 2000). It follows that "a settlement agreement cannot release claims that the parties were not authorized to release." <u>In re Am. Exp. Fin. Advisors Sec. Litig.</u>, 672 F.3d 113, 135-36 (2d Cir. 2011) (citing <u>Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.</u>, 660 F.2d 9, 19 (2d Cir. 1981)). "Parties often reach broad settlement agreements encompassing claims not presented in the complaint in order to achieve comprehensive settlement of class actions, particularly when a defendant's ability to limit [its] future liability is an important factor in [its] willingness to settle." <u>In re Literary Works in Elec. Databases Copyright Litig.</u>, 654 F.3d 242, 247-48 (2d Cir. 2011) (citing <u>TBK Partners, Ltd. v. Western Union Corp.</u>, 675 F.2d 456, 460 (2d Cir. 1982)).

It is settled law within this Circuit that "a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action. This is true

---

[4] My Approval Order adopting the Settlement Agreement allows me to retain jurisdiction to "implement, effectuate, enforce, interpret, and administer the terms of the Stipulation of Settlement." (Doc. No. 174, p. 6 ¶ 11.)

5

even though the precluded claim was not presented, and could not have been presented, in the class action itself." In re Prudential Ins. Co. of Am. Sales Practice Litig., 261 F.3d 355, 366 (3d Cir. 2001). The United States Court of Appeals for the Third Circuit has stated that, in determining whether an individual class plaintiff's subsequent claims are barred, the "key inquiry is whether the factual predicate for future claims is identical to the factual predicate underlying the settlement agreement." Freeman v. MML Bay State Life Ins. Co., 445 F. App'x 577, 579 (3d Cir. 2011); see also Monaco v. Mitsubishi Motors Credit of Am., Inc., 34 F. App'x 43, 45 (3d Cir. 2002).

Other circuit courts have also adopted this inquiry for determining when a class settlement release will bar future claims by individual class members. See e.g., Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future … [but] only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'"); Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 106 (2d Cir. 2005) (acknowledging that class plaintiffs' authority to release claims is "limited by the 'identical factual predicate' and 'adequacy of representation' doctrines"); Williams v. Gen. Elec. Capital Auto Lease, Inc., 159 F.3d 266, 274 (7th Cir. 1998) (concluding the substantive claims of the plaintiffs in the second lawsuit were barred because they were based on the "identical factual predicate" as the previously settled class action claims); Moulton v. U.S. Steel Corp., 581 F.3d 344, 349 (6th Cir. 2009) ("The question [of whether a subsequent claim is barred] is not whether the definition of the claim in the complaint and the definition of the claim in the release overlap perfectly; it is whether the released claims share a 'factual predicate' with 'the claims pled in the complaint.'").

The "identical factual predicate" doctrine thus acts as a limitation on a class settlement release. See Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1563 (3d Cir. 1994) (noting the rule "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that 'prevent relitigation of settled questions at the core of a class action'") (quoting TBK Partners, 675 F.2d at 460); see also In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d at 248.

In TBK Partners, a case often cited by the Third Circuit when applying the "identical factual predicate" doctrine,[5] the Second Circuit articulated the reasoning behind the doctrine, explaining that the named plaintiffs responsible for dictating the terms of a class settlement might be more willing to sacrifice the claims of other class plaintiffs for additional compensation, but at no cost to themselves:

> We [have] declined to permit the uncompensated release of claims resting on a separate factual predicate from that settled in the class action. If a judgment after trial cannot extinguish claims not asserted in [a] class action complaint, a judgment approving a settlement in such an action ordinarily should not be able to do so either…. [T]he heart of our concern [is] the danger that a class representative not sharing common interests with other class members [will] endeavor to obtain a better settlement by sacrificing the claims of others at no cost to themselves by throwing the others' claims "to the winds." There would be no assurance that the class representative had fully advanced the unshared claims of the class members. But these concerns are not implicated where the released claim rests on the same factual predicate as the class action claim.

TBK Partners, Ltd., 675 F.2d at 462 (citations omitted). The court further stated that "… special care must be taken to ensure that the release of a claim not asserted within a class action or not shared alike by all class members does not represent an … uncompensated sacrifice of claims of

---

[5] See e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d at 326 n. 82; Grimes, 17 F.3d at 1563; Freeman, 445 F. App'x at 579; Monaco, 34 F. App'x at 45.

members, whether few or many.'" Id. at 461 (quoting Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch., 660 F.2d at 19).[6]

The Third Circuit Court of Appeals has not adopted a strict interpretation of the "identical factual predicate" doctrine. See e.g., Freeman, 445 F. App'x at 579 (concluding that, while the individual plaintiff's claims challenged a different charge under the terms of his insurance policy, his claims were nonetheless barred because they involved a "method of calculation of [policy] charges," which was included in the previous released claims provision of the class settlement agreement); Monaco, 34 F. App'x at 45 (concluding that, although the two cases were brought under different sections of the Consumer Leasing Act and pertained to different provisions of the defendant's standard lease agreement, the second lawsuit was nonetheless barred because the plain language of the previous class settlement covered the "early termination charge provisions" of the lease agreement). Nevertheless, the doctrine remains good law within this Circuit, and I will apply it the factual predicates underlying the Scott and Dando actions to determine whether the Dando claims are barred.

The plaintiffs in Scott alleged that Defendants improperly classified them as independent operators when in actuality they were employees. More specifically, the Scott plaintiffs claimed that Defendants exercised supervisory and disciplinary control over them, made them work in excess of forty (40) hours per week without providing overtime pay, made unauthorized deductions from their paychecks, enforced "unwritten policies" that they were expected to follow, and prevented them from delivering certain products that Defendants considered to be in direct competition with their own. In short, the Scott plaintiffs essentially argued that Bimbo

---

[6] I am cognizant of the fact that the Scott litigation involved a FLSA collective action, and that class plaintiffs had to opt in, whereas in other class action suits class plaintiffs often must opt out. However, as TBK Partners makes clear, the doctrine applies with equal force to claims "not shared alike by all class members." Therefore, despite Dando's status as an opt-in class plaintiff, the policy considerations underlying the doctrine apply to the facts here.

Bakeries exerted the type of control typically found in an employer-employee relationship, while neglecting to compensate Class Plaintiffs accordingly under the FLSA.

The <u>Dando</u> litigation, on the other hand, involves very different facts. Dando alleges that Defendants breached the implied covenant of good faith and fair dealing under New Jersey common law. He argues that Defendants acted in bad faith when they forced him to lower his sale price for his distribution route, and then improperly exercised their right of first refusal to obtain the rights to the route at a significantly discounted price. None of Dando's factual allegations have anything to do with his status as an employee, the number of hours he worked for Bimbo Bakeries, his rate of pay, his ability to sell competing products, or his adherence to certain unwritten policies imposed by Bimbo Bakeries' management.

The only similarity between <u>Scott</u> and <u>Dando</u> is that the Distribution Agreement established the contractual relationship between the parties. However, that does not also mean that the cases share an "identical factual predicate." The events giving rise to the allegations in <u>Scott</u> were completely separate and distinct from those in <u>Dando</u>. Therefore, I conclude that Dando's individual breach of contract claims do not share the necessary "identical factual predicate" as the underlying factual allegations in <u>Scott</u>. As such, his case in the District of New Jersey is not barred by Paragraph 1.18 of the <u>Scott</u> Settlement.[7]

Defendants largely ignore the "identical factual predicate" doctrine, and urge that the plain language of the "Released Claims" provision covers <u>any</u> claim Dando might have had arising out of, related to, or in connection with his Distribution Agreement up through March 5,

---

[7]  The claims raised in both cases are also facially different. I am aware that it is not the claims that must be identical, but rather the factual predicates underlying those claims. <u>Moulton</u>, 581 F.3d at 349. Nevertheless, while I must assess the underlying facts of both cases, it stands to reason that the claims raised in each case are dictated by the underlying facts. In <u>Scott</u>, the plaintiffs advanced claims under the FLSA and related Pennsylvania minimum wage and overtime statutes. In <u>Dando</u>, however, Dando argues that Bimbo Bakeries breached the implied covenant of good faith and fair dealing under New Jersey common law, and has also alleged certain business torts including intentional interference with a contract.

2014 (i.e., the date of my Approval Order). Had this not been a collective action, and had the "identical factual predicate" doctrine not applied, my decision could have taken a different path.

Pennsylvania courts routinely uphold broad releases pursuant to traditional principles of contract law. See Krebs v. United Ref. Co. of Pennsylvania, 893 A.2d 776, 783 (Pa. Super. 2006) (noting the enforceability of settlement agreements is determined according to principles of contract law); see also A.G. Cullen Const., Inc. v. State Sys. of Higher Educ., 898 A.2d 1145, 1167 (Pa. Commw. Ct. 2006) ("The effect of a release is determined by the ordinary meaning of its language, [and] a party cannot evade the clear language of a release by asserting he did not subjectively intend to release the claim in question.").

Defendants' argument that the disjunctive phrasing[8] of the Scott settlement release could pertain to any cognizable legal claim that any of the class plaintiffs had up through the date of my March 5, 2014 Approval Order is not frivolous. See State v. Smith, 262 N.J. Super. 487, 506, 621 A.2d 493, 503 (App. Div. 1993) ("Purely as a matter of grammar, … [w]hen items in a list are joined by a comma or semicolon, with an 'or' preceding the last item, the items are disjunctive," and should thus be construed as separate, independent clauses). With respect to broad releases of subsequent claims, the Pennsylvania Supreme Court has held that however "improvident [the parties' settlement] agreement may be or subsequently prove for either party, their agreement, absent fraud, accident or mutual mistake, is the law of their case." Buttermore v. Aliquippa Hosp., 561 A.2d 733, 735 (Pa. 1989).

Application of these principles to this case would mean that every class plaintiff would have released any claim stemming from the Distribution Agreement because the operative language of Paragraph 1.18 released claims "that otherwise [arose] out of, related to, or [were] in

---

[8] Released claims include those that "otherwise arise out of, related to, or in connection with, [his] Distribution Agreement, **or**…"

connection with, the Distribution Agreement." (Settlement Agreement 6, ¶ 1.18.) However, the unique policy considerations at work in class settlements—which are not present in ordinary settlement release provisions—require an added layer of protection to ensure that an individual class plaintiff's interests are not thrown "to the winds." TBK Partners, Ltd., 675 F.2d at 462. The "identical factual predicate" doctrine affords individual class plaintiffs this protection.

### III.   <u>CONCLUSION</u>

For the reasons set forth above, the <u>Dando</u> claims are not barred by the "Released Claims" provision in the <u>Scott</u> Settlement Agreement because the two cases do not share an identical factual predicate. Defendants' motion is denied.

An appropriate order follows.